The People of the State of Illinois for the Use of Tabor
& Co., a Corporation, Plaintiff-Appellee, v. Farmers
Elevator Mutual Insurance Company, a Corporation,
Defendant-Appellant.

Gen. No. 10,728.

Fourth District.

July 7, 1966.

Craig & Craig, of Mattoon (Jack E. Horsley and John P. Ewart, of counsel), and Fleur & Bell, of Des Moines (Paul D. Wilson, of counsel), for appellant, Farmers Elevator Mutual Insurance Company.

LeForgee, Samuels, Miller, Schroeder & Jackson, of Decatur (Jerald E. Jackson, Thomas S. Sly, and Nicholas J. Neiebs, of counsel), for appellee.

TRAPP, P. J.

Defendant appeals from a judgment entered in the amount of $10,196.65.

This action was brought in the name of The People of the State of Illinois for the use of the plaintiff, Tabor & Company, to recover damages against the defendant, Farmers Elevator Mutual Insurance Company (hereinafter referred to as defendant), under the provisions of a Grain Warehouse Bond, wherein Loda Farmers Grain Company (hereinafter referred to as Loda) of Loda, Illinois, was the principal, Farmers Elevator was the surety, and The People of the State of Illinois were the obligees. In its complaint, the plaintiff alleges that it purchased from Loda 16,000 bushels of yellow corn, evidenced by its warehouse receipt number 677; that Loda failed to deliver grain valued at $10,191.65 on demand, and that because of said failure, the defendant is obligated, under the bond, to make restitution.

Defendant's pleading denies that there was any obligation to deliver grain; denies that plaintiff purchased 16,000 bushels of corn and admits a warehouse receipt No. 677 (hereinafter referred to as "receipt") was delivered to plaintiff; but denies that such "receipt" was "effectively made" and denies any rights in the plaintiff by reason of such "receipt"; defendant admits that a written demand for the delivery of grain was made by plaintiff but denies that there was any duty upon the part of Loda to deliver such grain. As a special affirmative defense made in the alternative, defendant contends that plaintiff sold the corn to Loda for an agreed value of $8,000 and that the "receipt" was returned to Loda, cancelled, and the obligations of Loda thereunder satisfied and discharged in full, so that defendant has no duty or liability by reason of the obligation of its bond.

The trial court made an express finding that Loda had purchased the corn for which the "receipt" was issued, and that such "receipt" was issued by Loda "in due course of business."

In support of its contention that the "receipt" was a nullity, defendant, in oral argument, urges that plaintiff participated in a fraud in procuring the issuance of the "receipt" and should be estopped from making a claim.

The transaction arises under the following facts:

Plaintiff engages in the buying and selling of grain in vast amounts. In the early part of 1963 it had, upon several occasions, purchased grain for immediate delivery from Loda. In these transactions Loda drew drafts upon bills of lading. About the first of May, one Ronna, the manager of Loda, engaged in a telephone conversation with one Wells, a representative of plaintiff. Wells asked to buy corn from Loda, to which Ronna responded that Loda did not have the money to buy corn. Wells then said that if Loda "wanted to buy it" to make out a warehouse receipt. Plaintiff's Exhibit B is a "purchase contract" sent by plaintiff to Loda authorizing the purchase of 16,000 bushels of corn, affirming a purchase of May 1st at $1.14½ per bushel for shipment "equal 1st half June and last half June." This instrument contained instructions that drafts should be drawn on plaintiff through the Milliken Bank in Decatur.

Ronna, manager for Loda, was called by defendant as its witness. He testified that at the time of the conversation with Wells, although Loda did not own corn in the elevator, there was stored corn belonging to the Commodity Credit Corporation, for which warehouse receipts had been issued in an amount equal to or greater than the amount of plaintiff's proposed purchase. Ronna testified further to the practice of Commodity Credit Corporation whereby Loda could buy corn from Commodity Credit Corporation by calling it and asking for the price, and the latter would thereupon draw a draft for the amount of the corn, and it would be considered sold to Loda, which was then free to sell it. He further testified that Loda did get the corn from the Commodi-

4

ty Credit Corporation and that, in this case, he issued the "receipt" to plaintiff for corn which was there.

The "receipt" in negotiable form, in issue, bears date May 1, 1963, and stated that the corn was "received for the account of" plaintiff. Data inserted in the "receipt" in handwriting, indicates that the corn was deposited on August 10, 1962. So far as the Abstract discloses, the "receipt," with a draft in the sum of $18,000 drawn upon the plaintiff, was deposited in the Bank of Paxton about May 3, 1963. The proceeds of the draft were deposited to the account of Loda.

There is no contention that the "receipt" in issue was illegal upon its face.

Defendant contends, however, that the "receipt" is a nullity or a false "receipt" because no corn was, in fact, delivered by the plaintiff, and that plaintiff did not own grain for which the "receipt" was issued, and that Loda did not own the grain in the amount called for in the "receipt" when said "receipt" was issued, all of which were facts then known to plaintiff through its representative. It is further contended that the transaction only created a relationship wherein plaintiff was creditor and Loda was a debtor for the purpose of buying corn for the several reasons stated.

It is urged that the "receipt" was issued in violation of chap 114, § 214.21 (Ill Rev Stats, 1963), which provides, among other things, that:

> ". . . no warehouse receipt shall be issued except upon the actual delivery of grain into store in the warehouse from which it purports to be issued, and which is to be represented by the receipt, . . . ."

In its reply brief, defendant urgently insists that plaintiff's representative knew that plaintiff was not actually delivering grain into the warehouse, and that by reason of the foregoing section of the statute, plaintiff was a holder taking a "receipt" which it knew was

5

illegal, so that it has no cause of action against the defendant.

As noted above, the corn was then stored in the elevator. The argument seems to require the premise that as to a particular lot of grain, a warehouse receipt can only be issued upon its initial delivery into the elevator. However, chap 114, § 214.26 (Ill Rev Stats, 1963), provides that a new receipt may be issued to a lawful holder, and the relevant portions of the Commercial Code, chap 26, § 7–501 et seq. (Ill Rev Stats, 1963) contemplate negotiation of warehouse receipts between the parties interested. Chap 114, § 214.27 (Ill Rev Stats, 1963), specifying the penalties, in par (a), provides a penalty for the issuance of a warehouse receipt by an operator knowing that the grain has not actually been received, or is not under his actual control at the time of issuance of the receipt.

■ It appears, therefore, that § 214.21 fundamentally means that no warehouse receipt shall be issued for grain which isn't there, or for which lot or interest in grain a warehouse receipt is outstanding, i. e., a given interest shall not be represented by more than one receipt. Accordingly, we do not agree with defendant's contention that plaintiff could not legally become a holder of the "receipt" unless it actually delivered grain to Loda.

We believe that the evidence is clear that at the time of the conversation between Ronna for Loda and Wells for plaintiff there was corn owned by the Commodity Credit Corporation in storage in Loda's elevator in an amount sufficient to cover the "receipt." There is, in fact, no testimony or other evidence to the contrary.

■ Defendant strongly urges that the transaction arranged called for plaintiff to advance money to Loda for the purchase of grain, and to issue the "receipt" upon subsequently acquired grain. There is nothing in the Abstract which compels such an interpretation of the

evidence. It appears that the substance of the transaction, as presented by plaintiff, was that if Loda wanted to buy grain to sell to plaintiff, it should deposit a draft with a warehouse receipt as evidence of title. Except as to time of delivery the transaction was of the same nature as in those instances when Loda sold corn to plaintiff by drawing a draft upon the latter, which was deposited with a bill of lading. In fact, plaintiff's Exhibit D, being the written affirmation of the contract, is in a form which calls for a bill of lading. Under the evidence, the date May 1st appearing upon the "receipt" should not control the rights of the plaintiff, but rather such were determined when plaintiff became obligated by reason of the deposit of the "receipt" and the draft with the Bank of Paxton. Under the matters in evidence, as set out in the Abstract, there is no reason requiring the conclusion that plaintiff, or its representative, had reason to believe that Loda would issue the "receipt" in an illegal manner or at a time when it did not have title to the corn.

■ Defendant relies upon Central Nat. Bank of Mattoon v. Fidelity & Deposit Co. of Maryland, 324 F2d 830; Fidelity State Bank v. Central Surety & Insurance Corp., 228 F2d 654, and Central States Corp. v. Luther, 215 F2d 38. In each of these cases the court held that the warehouse receipt was illegal upon its face and that the holder thereof, by reason of the apparent illegality of the receipt, would take no right or interest therein. There is no illegality appearing on the face of the "receipt" in issue, and the evidence does not support the contention that plaintiff was participating in a transaction which was fraudulent or designed to create an illegal warehouse receipt. The finding of the trial court that the "receipt" was issued in due course of business and that Loda purchased the corn and thereafter transferred title by its "receipt" to plaintiff, is fully justified under the evidence.

7

It is urged also, in the alternative, that the grain called for in the "receipt" was actually sold by plaintiff to Loda as evidenced by checks in the total sum of $18,000, and by the fact that the "receipt" in issue, plaintiff's Exhibit B, is endorsed upon its face, "cancelled Aug. 2, 1963." The evidence upon this proposition requires careful scrutiny. Defendant's witness, Ronna, upon cross-examination, testified that nothing was said to or by the plaintiff concerning the purchase back by Loda.

Defendant's Exhibit A is a check dated July 22, 1963, signed by Ronna, from Loda to plaintiff in the sum of $10,000. The evidence upon this transaction comes in the testimony of Ronna. He states that plaintiff, at various times, requested that the corn be shipped "against this receipt," and he further testified that:

> "I shipped corn at that time, but we drew money against it. Our payment by check was not because we didn't have the corn at that time. I shipped some of the corn but not the full amount."

Defendant's Exhibit B is a check signed by Ronna, dated July 25, 1963, payable to plaintiff in the sum of $2,000. This transaction seems to be of the same nature as that in defendant's Exhibit A. This check was returned with the notation that the account was closed and "nonpayment wired." As to these transactions, it appears that plaintiff's grain had been shipped as requested, but that Loda had actually received the value of the corn by drawing drafts against that which was shipped.

Defendant's Exhibit C is a check of Loda signed by one Gwendolyn Ennen, bookkeeper acting for Robert Ronna, manager, dated July 30, 1963, in the sum of $6000. This check was dishonored for want of sufficient funds and "nonpayment wired." The evidence is that Ronna went on vacation on July 25, 1963, and never re-

8

turned to his employment as manager of Loda. The witness, Ennen, was called by plaintiff and testified that after Ronna left she managed the affairs of Loda, and that on July 29, 1963, two cars of corn were shipped pursuant to the request of plaintiff for which she drew a draft in the sum of $2,300, but that on July 30th a representative of plaintiff advised her:

> "Don't draw drafts on corn you are shipping because it is already sold."

She stated that she asked how much was owed and that she would issue a check. She further testified that Loda was supposed to be shipping corn, but didn't have enough, and that she thought it would be better "to pay the balance of the corn."

Again, it appears a reasonable conclusion that Loda had disposed of corn when it had no right to do so, and obtained the proceeds thereof. There is nothing in the transaction to indicate that plaintiff had undertaken to sell its corn to Loda, but, on the contrary, it appears that Loda volunteered to send the check when the mishandling of plaintiff's corn was disclosed.

Defendant's position seems unreasonable in the light of the surrounding circumstances, when it is noted that the sum of Loda's checks is $18,000, or the exact amount paid by plaintiff by its draft of May 3rd, when corn was $1.14 per bushel. The evidence is that by July 23rd the price of corn was $1.23 per bushel, and there is nothing in the record which suggests the reason why plaintiff should sell the corn back to Loda at a price nine cents per bushel below market value.

Again, the record discloses that Loda sought to solve this difficulty by issuing checks when the account was closed. In United States Fidelity & Guaranty Co. v. Long, 214 F Supp 307, the court said:

> ". . . The taking of a written obligation from the principal, by a depositor, does not preclude the de-

9

positor from recovering on the bond, in the absence of a special agreement that the instrument should be accepted in absolute payment of the obligation. The presumption is that it was accepted on condition that it should itself be paid. . . ."

Nothing in the record justifies the conclusion that plaintiff ever undertook to sell its corn to Loda, and nothing suggests a disposition of the matter in the nature of an accord and satisfaction with regard to its interest in such corn.

The return of the "receipt" on or about Aug 2, 1963, and its endorsement as cancelled by the witness, Ennen, should not deprive the plaintiff of relief under these circumstances. Chap 114, § 214.20 (Ill Rev Stats, 1963), provides that:

"Upon the delivery of corn from store upon any receipt, . . ."

the receipt shall be cancelled. The return of the "receipt" to Loda when the grain, in fact, had not been delivered, does not empower Loda to impose a binding cancellation upon plaintiff. It is the delivery of the grain, rather than possession of the "receipt," which requires the cancellation. It is certainly fair to say that Loda is properly charged with notice of whether the grain has been delivered.

In United States v. Merchants Mut. Bonding Co., 242 F Supp 465, the District Court of Iowa considered claims upon a warehouseman's bond, and found such claims valid even though the warehouse receipt had been surrendered at a time when no grain had been shipped, or grain had been shipped in deficient amounts. That court suggested that even negligence upon the part of the depositor would not bar recovery upon the warehouseman's bond. Here, there is no evidence that Loda was misled or took any action to its detriment when

10

the "receipt" was returned to it, for its representatives were in a position to know the facts. Chap 114, § 214.23 (Ill Rev Stats, 1963), provides, with certain reservations which are not now in issue, that a warehouseman is bound to deliver the grain upon the demand by the holder of a receipt, and:

> "In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

The existence of the demand is not denied, and the determination of the amount of the judgment is not challenged. We do not believe that, under the evidence in this case, Loda has met the statutory burden of proof, and that, on the contrary, it appears that plaintiff is the holder of a warehouse receipt for grain who should receive the benefit of the warehouseman's bond.

The judgment of the trial court is affirmed.

Affirmed.

SMITH and CRAVEN, JJ., concur.