**STATE of North Dakota ex rel. PUBLIC SERVICE COMMISSION of the State of North Dakota, Petitioner/Appellee,**

**v.**

**R. F. GUNKELMAN & SONS, INC., and R. F. Gunkelman & Sons, Inc., of Grafton, Respondents,**

**The First National Bank and Trust Company of Fargo et al., Appellants,**

**James Herzog, Trustee in Bankruptcy, Appellant.**

**Civ. No. 8963.**

Supreme Court of North Dakota.

June 28, 1974.

Garrity, Cahill, Gunhus, Streed, Grinnell & Jeffries, Moorhead, Minn., for appellant James Herzog.

Tenneson, Serkland, Lundberg & Erickson, Fargo, for appellants.

Ray H. Walton, Commerce Counsel, Public Service Commission, Bismarck, for petitioner/appellee.

Wheeler, Wolf, Wefald & Durick, P. C., Bismarck, for Agway, Inc., appellee.

John I. Finsness, Fargo, for appellee, David & Sons, Inc.

Wattam, Vogel, Vogel & Peterson, Fargo, for appellee Fidelity & Cas. Co. of New York.

KNUDSON, Judge.

This is an appeal from a judgment of the district court of Burleigh County, which judgment was based on the adoption by the district court of the findings of fact and conclusions of law of a referee who was appointed, under Rule 53, N.D.R.Civ. P., to hear this case.

This appeal is pursued in this court by the First National Bank and Trust Company of Fargo, The Merchants National Bank and Trust Company of Fargo, and the Bunge Corporation, all of whom are secured creditors of R. F. Gunkelman & Sons, Inc. (Gunkelman), and by James H. Herzog, the successor trustee in bankruptcy of Gunkelman. The banks and Bunge Corporation will be referred to as the secured parties and Mr. Herzog will be referred to as the trustee in bankruptcy. Responding to the appeal are warehouse receipt holders, Agway, Inc. and David & Sons, Inc., and Fidelity and Casualty Company of New York, which will be referred to as Agway, David and the bonding company, respectively.

Gunkelman was a public grain warehouseman engaged in said business in North Dakota. By an order dated August 3, 1970, the Burleigh County District Court found Gunkelman to be insolvent and appointed the Public Service Commission of North Dakota (PSC) as trustee of Gunkelman's assets, all in accordance with Chapter 60–04, N.D.C.C.

The PSC marshaled the assets of Gunkelman, gave notice to all warehouse receipt holders to file their claims against the assets and, on November 29, 1971, filed its trustee's report with the district court. The trustee's report was served on all interested parties and they were given until January 10, 1972, to object to that report.

Written objections to the trustee's report were filed and were heard by the referee on briefs and oral argument. Said referee had been appointed by the district court on February 3, 1972.

Among many other things, the referee found and determined that Agway and David held valid warehouse receipts for certain amounts of sunflower; that from July 28, 1970 to August 3, 1970, the period the secured parties had possession of Gunkelman's assets, they sold $135,805.15 worth of grain as secured creditors; and that certain assets of Gunkelman should be classed as grain instead of seed and included in the fund available for distribution to warehouse receipt holders.

In addition, on February 19, 1973, the referee moved the district court to amend its findings of fact and conclusions of law so as to apply certain offsets to the amounts calculated as due to receipt holders. The district court denied the referee's motion to amend the report and adopted it with other amendments made by the court not material to the issues in this case.

The two appellants present a total of five issues for review. They are:

1. Whether the warehouse receipts held by Agway are valid claims against the fund of Gunkelman's assets held by the PSC;

2. Whether the warehouse receipts held by David are valid claims against the fund of Gunkelman's assets held by PSC;

3. Whether the trial court erred in adopting the referee's report with respect to finding of fact number 12 of that report, which finding deals with the sale of some of Gunkelman's assets by the secured parties while they were in possession of the assets as secured creditors;

4. Whether the trial court erred in adopting the referee's report with respect to the classification of certain items as grain, which were therefore includable in the trust fund;

5. Whether the trial court erred in refusing to adopt an amendment to the referee's report, which amendment applied offsets to the claims against the assets of Gunkelman.

One of the appellees, the bonding company, raises the issue of whether the notice of appeal of the trustee in bankruptcy presents appealable material.

It is claimed by the secured parties that the warehouse receipts held by Agway and David are invalid because there was no actual delivery of grain made by Agway and David to Gunkelman. This actual delivery is provided for by § 60–02–16(1), N.D.C.C., which reads:

"A warehouse receipt shall:

"1. Be issued only upon the actual delivery of grain to the warehouse for storage;"

The circumstances of the instant case are that grain was purchased by Agway and David from Gunkelman. At the time of the purchases, Gunkelman either owned the grain in an upgraded form or agreed to grow it and issued warehouse receipts in return for payment for the sunflower purchased. Our problem is determining the validity of the warehouse receipts under these circumstances, where there was no actual delivery and where the grain is not segregated as to the quality prescribed in the receipt.

Preparatory to our discussion we cite the relevant parts of various statutes:

" 'Document of title' includes bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers. To be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass." Section 41–01–11(15), N.D.C.C.

"1. In this chapter, unless the context otherwise requires:

"a. 'Bailee' means the person who by a warehouse receipt, bill of lading or other document of title acknowledges possession of goods and contracts to deliver them." Section 41–07–02(1)(a), N.D.C.C.

"To the extent that any treaty or statute of the United States, regulatory statute of this state or tariff, classification or regulation filed or issued pursuant thereto is applicable, the provisions of this chapter are subject thereto." Section 41–07–03, N.D.C.C.

"Chapter 07, Documents of Title, of Title 41, Uniform Commercial Code, does not repeal or modify any laws prescribing the form or contents of documents of title or the services or facilities to be afforded by bailees, or otherwise regulating bailee's businesses in respects not specifically dealt with herein; but the fact that such laws are violated does not affect the status of a document of title which otherwise complies with the definition of a document of title (41–01–11)." Section 41–07–06, N.D.C.C.

"The obligations imposed by this chapter on an issuer apply to a document of title regardless of the fact that

"1. the document may not comply with the requirements of this chapter or of any other law or regulation regarding its issue, form or content; or

\* \* \* \* \* \*

"3. the goods covered by the document were owned by the bailee at the time the document was issued;"

Section 41–07–26(1) and (3), N.D.C.C.

▮ From Section 41–01–11(15), N.D.C.C., we determine that the warehouse receipts held by Agway and David are documents of title covering the specified amounts of sunflower. The receipts were issued by the bailee Gunkelman (§ 41–07–02(1)(a), N.D.C.C.), and they covered certain qualities of sunflower contained in a mass of "country run" sunflower. The specified grades in the receipts were fungible portions of the mass of "country run" sunflower.

It might appear from §§ 41–07–03 and 41–07–06, N.D.C.C., that § 60–02–16(1), N.D.C.C., quoted *supra*, would apply, that is, that actual delivery to a warehouse would be necessary for a valid warehouse receipt. However, the saving clause in §§ 41–07–06 and 41–07–26(1) and (3), N.D.C.C., remove any impediment to the validity of Agway's and David's receipts. From the cited statutes it is apparent that the Uniform Commercial Code does not repeal prior law, like § 60–02–16(1), N.D.C.C., but that if such prior law is not complied with, the warehouse receipt still imposes the obligation on the issue of said receipt to perform the agreement therein contained.

▮ In the instant case the receipts were not issued after delivery of grain to the warehouse, as § 60–02–16(1), N.D.C.C., requires, which under § 41–07–26(1), N.D.C.C., is a noncompliance with other law. In addition, the bailee, Gunkelman, owned the goods covered by the receipts at the time of their issuance. Despite these irregularities, § 41–07–26, N.D.C.C., imposes all the obligations on the issuer of the receipt as contained in § 41–07–28, N.D.C.C.

Furthermore, a statute similar to our § 60–02–16(1), N.D.C.C., was interpreted by the Appellate Court of Illinois to mean only that no warehouse receipt shall be issued for grain which is not in the warehouse, not that the specific grain covered by the receipt must have been delivered to the warehouse in return for the receipt in question. In People v. Farmers Elevator Mutual Insurance Co., 74 Ill. App.2d 1, 220 N.E.2d 585 (1966), the relevant statute read, in part:

"Except as provided in Section 10 of this Act, no warehouse receipt shall be issued except upon the actual delivery of

grain into store in the warehouse from which it purports to be issued, and which is to be represented by the receipt; * * *" S.H.A. ch. 114, § 214.21 (1974 P.P.).

In the *Farmers Elevator* case, there was a sale of corn by the warehouseman and no corn was actually delivered to the warehouse in return for the warehouse receipts issued. With regard to this problem, the Appeals Court of Illinois said:

"It appears, therefore, that § 214.21 fundamentally means that no warehouse receipt shall be issued for grain which isn't there, or for which lot or interest in grain a warehouse receipt is outstanding, i. e., a given interest shall not be represented by more than one receipt. Accordingly, we do not agree with defendants' contention that plaintiff could not legally become a holder of the 'receipt' unless it actually delivered grain to Loda." 220 N.E.2d at 587.

Adopting the reasoning of the above case, we believe that the warehouse receipts of Agway and David are valid. The district court's judgment with respect to the validity of those receipts is, therefore, affirmed.

The bonding company claims that the notice of appeal of the trustee in bankruptcy is deficient in that it attempts to appeal from the referee's report. The bonding company therefore asserts that the appeal of the trustee in bankruptcy, with respect to the classification of certain items as grain and with respect to offsets, is a nullity.

■ In its amended findings of fact the district court adopted the referee's report in its entirety and considered said report to be the findings of the court. In addition, Rule 52(a), N.D.R.Civ.P., provides in part:

"* * * The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court * * *"

As a result, the findings of the referee and of the district court are one and the same. So, the fact that the appellant, trustee in bankruptcy, identified the objectionable material by referring to the referee's report is of no great moment. It was merely a means of identification, and we believe that the notice of appeal is, therefore, sufficient.

Rule 52(a), N.D.R.Civ.P., provides in part:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon * * * Findings of fact shall not be set aside unless clearly erroneous * * *"

■ As the instant case was tried without a jury and the district court adopted the referee's findings and conclusions, Rule 52(a) is applicable to this case.

It is the contention of the secured parties that the referee's general finding of fact number 12 is beyond the scope of the referee's authority and should be set aside. Said finding of fact number 12 reads:

"12. That during the period of July 28, 1970 to August 3, 1970, while the Secured Creditors had possession of respondent's assets, they sold $135,805.15 worth of grain as secured creditors. (Exhibit 30)"

■ Finding of fact number 12 appears under the heading of general findings of fact and is part of the general background of the case. Finding number 11 recites the whereabouts of other grain and the amount received from the sale of other grain. Finding number 12 then recites what happened to part of the grain while Gunkelman's assets were under the control of the secured parties. The accuracy of finding number 12 is not contested since it is apparently based upon the testimony of an agent of the secured parties. We can find nothing erroneous about finding number

12. If its presence is a gratuity as alleged by the secured parties and its inclusion error, it is only harmless error as it affects no substantial rights of the parties. Rule 61, N.D.R.Civ.P.

▮ With respect to the classification of certain of Gunkelman's assets as grain and therefore includable in the trust fund for the benefit of receipt holders, there appears to be a conflict between the trustee in bankruptcy and the bonding company. The trustee in bankruptcy would like to see the relevant assets considered as non-grain items and therefore placed in the fund for the benefit of creditors of Gunkelman. The bonding company, on the other hand, wants the assets in question considered as grain and included in the trust fund for the benefit of receipt holders. The referee found in favor of the bonding company, and we agree with him.

Section 60–04–02, N.D.C.C., provides in part:

"* * * a trust fund for the redemption of outstanding storage receipts of such warehouseman shall consist of the following:

"1. All the grain in said warehouse;"

The obvious purpose of Chapter 60–04, N.D.C.C., is to aid receipt holders in redeeming their warehouse receipts by making the PSC the trustee of insolvent grain warehousemen with the duty of redeeming said receipts for as close to their full value as possible. In line with this goal, we believe that the assets should be considered grain whenever reasonable. We believe the referee had this in mind when he decided on the classification he made. This is evident from the referee's comment with regard to the fact that Gunkelman may have processed some of the grain it received. The referee said in conclusion of law number 6, under Part XXIII of his report:

"6. The fact that respondent added value to bailed grain, or grain not paid for, should not deprive the bailor, or unpaid seller, of his right to the value of that grain in these trust proceedings."

The referee's findings and conclusions with respect to the classification of grain items are, accordingly, affirmed.

▮ With reference to the treatment of offsets by the referee, we believe that the issue is not properly before us. Rule 53(e)(2), N.D.R.Civ.P., provides, among other things, that a party has ten days from service of notice of the filing of the referee's report in which to file written objections to said report. We can only assume that the trustee in bankruptcy was aware of this rule and that he intentionally and knowingly waived his right to object. The trustee in bankruptcy has not come forth with any justifiable excuse for not objecting within the time allowed by the rule. However, even if this issue were properly before us, we would be compelled to follow § 60–04–09, N.D.C.C., which directs the PSC to file a report in court showing the amount payable to each receipt holder after recognizing "deductions therefrom by reason of advances or offsets by said warehouseman." This is what was done by the PSC in its original report; it was upheld by the referee and by the district court when it denied the referee's motion to amend his report with respect to offsets. We would uphold the district court in its decision.

The judgment of the district court is affirmed in all respects.

ERICKSTAD, C. J., and TEIGEN, PAULSON and VOGEL, JJ., concur.