**Paul M. NEHRING, Plaintiff-Appellant,**

v.

**FIRST DeKALB BANCSHARES, INC., et al., Defendants-Appellees.**

No. 81–2813.

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1982.

Decided Nov. 16, 1982.

Rehearing and Rehearing En Banc Denied Dec. 8, 1982.

Donald L. Bertelle, Chicago, Ill., for plaintiff-appellant.

Charles R. McKirdy, Chicago, Ill., for defendants-appellees.

Before CUDAHY, ESCHBACH and POSNER, Circuit Judges.

ESCHBACH, Circuit Judge.

The plaintiff in this case asked the district court to render a declaratory judgment that the terms of a merger agreement involving the defendant banks and bank holding company violate 12 U.S.C. § 215a. The district court, holding that subject matter jurisdiction was lacking, dismissed the claim. For the reasons expressed in this opinion, we affirm.

## I. THE REORGANIZATION PLAN

In 1980, the individual defendants, directors or substantial shareholders of the First National Bank in DeKalb, Illinois, ("First National") devised a plan to reorganize the bank. According to the plan, First DeKalb Bancshares, Inc., would be formed to operate as a bank holding company. Then an interim, or "phantom" bank, the Second National Bank in DeKalb ("Second National") would be established as a wholly-owned subsidiary of the bank holding company.

The culmination of the reorganization would be the merger of First National into Second National. Pursuant to the terms of the detailed merger agreement, shareholders of First National who dissented to the merger could elect to receive the appraised value of their stock. Shareholders who did not dissent and dissenters who did not elect the appraised value of their stock, would receive shares in First DeKalb Bancshares (the holding company) in exchange for their shares in First National. The resulting bank would then be renamed "The First National Bank in DeKalb" and would succeed to all of the original bank's deposits, accounts, and employees. At this point, however, the ownership structure of First National would have changed. Shareholders who did not receive the appraised value of their First National shares, would own stock in the bank holding company, not the "new" First National Bank in DeKalb.

## II. ADMINISTRATIVE APPROVAL AND DISTRICT COURT PROCEEDINGS

The bank reorganization required the approval of two different regulatory agencies. Section 3(a) of the Bank Holding Company Act of 1956, ch. 240, § 3, 70 Stat. 133 (codified as amended at 12 U.S.C. § 1842(a)) makes it unlawful to form a bank holding company or to cause a bank to become a subsidiary of a bank holding company, without prior approval of the Federal Reserve Board. The merger of two national banks, by contrast, requires the approval of the Comptroller of the Currency. 12 U.S.C. §§ 215(a), 215a.

On December 15, 1980, First DeKalb Bancshares applied to the Federal Reserve Bank of Chicago for approval to become a bank holding company.[1] The application described all the components of the reorganization plan, including the merger of First National and Second National banks. The plaintiff, a substantial minority shareholder and a director of First National, submitted to the Federal Reserve Bank of Chicago his objections to the reorganization plan; however on May 11, 1981 the application was approved. The Board of Governors of the Federal Reserve System indicated on May 18, 1981, that it would not review the decision and thus the Board's approval of First DeKalb Bancshares' application to become a bank holding company became final. *See* 12 C.F.R. § 265.3 (1982).

On June 28, 1981, before any of the defendants applied to the Comptroller of the Currency for approval to merge the First National and Second National banks, the plaintiff filed this action in the district court. The plaintiff, in his complaint, asked the court for a declaratory judgment "to the effect that the proposed merger agreement [of First National and Second National banks] is in violation of the express terms of 12 U.S.C. Sec. 215a ... and that said agreement is unlawful."[2] In particular, the plaintiff claimed that § 215a(d)[3] mandates that shareholders who vote for the merger and dissenters who so elect, be given shares in the resulting merged bank in exchange for their First National shares. Because the merger agreement specifies that shares of First National are to be exchanged for shares of First DeKalb Bancshares, a holding company, the plaintiff asked the court to declare the agreement illegal. The impetus for the suit arises from the fact that the plaintiff values shares in a bank holding company less than shares in the operating bank; he asserts that he will no longer be able to elect himself to the bank's board of directors.

On August 5, 1981, while the district court action was pending, an application to merge First National into Second National was filed with the Comptroller of the Currency. It is undisputed that the plaintiff was aware that the Comptroller had to approve the merger.[4] Throughout August and early September, the DeKalb newspaper published notices of the pending application. The notices invited interested parties to submit comments to the Comptroller; however the plaintiff, vigorously pursuing his federal court action, failed to do so.

The district court, on September 22, 1981, granted the defendants summary judgment on the entire complaint.[5] The district court held that the Federal Reserve Board had exclusive original jurisdiction to hear the plaintiff's complaint that the merger agreement violates the command of 215a. Observing that judicial review of Federal Reserve Board decisions is in the courts of

---

1. Board regulations delegate to the Federal Reserve Banks the authority to approve initially bank holding company applications. *See* 12 C.F.R. § 265.2(f) (1982).

2. The plaintiff's complaint also contained the allegation that an illegal interlocking directorate existed between First National and a nearby bank. The district court held that this allegation did not state a claim on which relief may be granted. The plaintiff does not pursue this point on appeal.

3. Section 215a(d) states in pertinent part that "[t]he shares of stock of the receiving association which would have been delivered to ... dissenting shareholders had they not requested payment [in exchange for their shares] shall be sold by the receiving association at an advertised auction ...." Section 215b defines "receiving association" as "the national banking association into which one or more national banking associations ... merge."

4. The terms of the merger agreement explicitly state that an application to the Comptroller "for approval of the merger under the provisions of Section 215a of Title 12" is required. Indeed, plaintiff's counsel, in a letter to the Board of Governors of the Federal Reserve System dated March 25, 1981, stated that the Comptroller would have no authority to approve a merger that violates the mandates of § 215a.

5. On October 29, 1981, the district court modified its memorandum decision of September 22, to make explicit that the bank merger application was pending before the Comptroller. The court, however, denied the plaintiff's motion to vacate the dismissal of the complaint.

appeals, the district court held that it lacked subject matter jurisdiction to hear the plaintiff's claim. The district court further held that to the extent the Comptroller of the Currency has jurisdiction to consider whether the merger agreement violates 215a, "prior to the Comptroller's action, this court would have no basis for reviewing his decisions . . . ."[6]

## III. REMEDIES

■ The plaintiff presented to the Federal Reserve Bank of Chicago his contention that the merger agreement fails to comply with the statutory requirements of 12 U.S.C. § 215a(d). The Federal Reserve Bank found the plaintiff's contention insufficient to block approval of First DeKalb Bancshares' application to become a bank holding company. We do not now have to decide whether the Federal Reserve Bank erred in approving, over the plaintiff's objection, First DeKalb's application. We need merely note, as the district court did, that a party aggrieved by an order of the Federal Reserve Board may obtain judicial review of such order only in a court of appeals. *See* 12 U.S.C. § 1848; *Memphis Trust Co. v. Board of Governo System,* 584 F.2d 921, 925 (6th Cir.1978). The district court, therefore, properly declined to review the Federal Reserve Board's decision to approve First DeKalb Bancshares' application.

The plaintiff concedes that the district court had no jurisdiction to review the Federal Reserve Board's decision to approve First DeKalb Bancshares' application to become a holding company. The plaintiff now maintains, contrary to his position before the Federal Reserve Board, that Congress gave the Board no authority to consider whether the terms of a merger agreement violate the requirements of 12 U.S.C. § 215a. Instead, the plaintiff argues, the Comptroller of the Currency has the authority to disapprove a merger of national banks if the terms of the merger agreement fail to satisfy the commands of § 215a.

■ We agree with the plaintiff that when an application to merge national banks is presented to the Comptroller, he may consider whether the terms of the merger agreement comply with the requirements of § 215a.[7] This conclusion is dictated by the language of § 215a, which states in relevant part that "[o]ne or more national banking associations, under an agreement not inconsistent with sections 215–215b of this title, may merge into a national banking association . . . ."[8] The plaintiff, however, did not present to the Comptroller his contention that the merger agreement in this case violates § 215a(d) because it fails to permit shares in First National to be exchanged for shares in the resulting merged bank. Instead, the plaintiff presented this contention to the district court and invited the court to declare, before the Comptroller acted, that the merger agreement is illegal.

■ We hold that the district court correctly declined to decide whether the merger agreement between First National and Second National violates 12 U.S.C.

6. The defendants have filed a motion claiming that events that have transpired since this appeal was filed have rendered the case moot. Pursuant to 12 U.S.C. § 215a, a shareholder who dissents to a merger of national banks is entitled to receive the appraised value of his shares if he so requests within thirty days after the consummation of the merger. The defendants contend that the merger has now been consummated but the plaintiff did not pursue his appraisal rights; therefore the appeal is moot. The defendants' argument misconstrues the nature of the plaintiff's action. The plaintiff seeks a declaratory judgment that the merger agreement is illegal; he does not seek vindication of his appraisal rights.

7. We do not have to reach the question whether the Federal Reserve Board has authority to disapprove an application to become a bank holding company if a plan submitted with the application describes a merger, subject to Comptroller approval, that is inconsistent with the terms of 12 U.S.C. § 215a.

8. Pursuant to § 215a, the Comptroller also plays an active role in protecting a dissenting shareholder's right to opt for the appraised value of his stock. For instance, a shareholder who is dissatisfied with the initial appraisal of his stock may appeal to the Comptroller, "who shall cause a reappraisal to be made." 12 U.S.C. § 215a(c).

§ 215a(d). The plaintiff directs our attention to the rights created by § 215a. Congress, however, enacted *all* of § 215a; the statutory rights cannot be readily separated from the statutorily established means to vindicate those rights. *See generally* Stewart & Sundstein, *Public Programs and Private Rights,* 95 Harv.L.Rev. 1195 (1982). Congress explicitly vested the Comptroller of the Currency, not the district courts, with the authority to evaluate merger plans in light of the requirements of § 215a and to disapprove unlawful mergers.

To enforce the requirements of § 215a, the plaintiff would have this court imply a new remedy: before the Comptroller acts on a bank merger application, a private party may petition a federal district court to render a declaratory judgment that a proposed merger plan is illegal under § 215a. Finding no evidence that Congress intended to create such a remedy, we will not "rewrite" the statute as the plaintiff requests. *See generally Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981) (in deciding whether a federal statute creates a private remedy, congressional intent must be the focus).

We believe that to imply district court authority to make the initial determination of a merger plan's propriety would substantially disrupt and weaken § 215a's blend of rights and remedies. *See Whitney National Bank v. Bank of New Orleans and Trust Co.,* 379 U.S. 411, 420, 85 S.Ct. 551, 557, 13 L.Ed.2d 386 (1965). The Comptroller's effectiveness as vindicator of rights established by § 215a, would be weakened as parties could ignore Comptroller proceedings, *see* 12 C.F.R. §§ 5.1–5.13 (1982), in favor of district court declaratory judgment actions. *See McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). Section 215a's uniform enforcement, ensured to some extent by having a specialized, expert agency make the initial determination of a merger's legality, would be threatened. Also, the principle that "courts should defer to an agency's construction of its own statutory mandate," *Board of Governors of the Federal Reserve System v. Lincolnwood Corp.,* 439 U.S. 234, 251, 99 S.Ct. 505, 514, 58 L.Ed.2d 484 (1978), would be emasculated in this context if courts had the authority to make the initial interpretations of § 215a's language.

Moreover, conflict and confusion would inevitably result if parties who oppose mergers of national banks were permitted to eschew Comptroller proceedings in favor of district court actions. *See Whitney National Bank v. Bank of New Orleans and Trust Co.,* 379 U.S. 411, 422, 85 S.Ct. 551, 558, 13 L.Ed.2d 386 (1965). Some merger opponents might bring their objections to the Comptroller while others might seek declaratory or injunctive relief in district courts. The possibilities of different standards, records, and results all lead us to conclude that the district court correctly declined to pass on the propriety of the merger agreement before the Comptroller had acted in this case.

We find inapposite the plaintiff's contention that the doctrine of administrative remedies should not apply in this case. The exhaustion requirement is most often employed as a prerequisite to judicial review of agency actions. *See* K. Davis, *Administrative Law Treatise* §§ 20.11–20.23 (supp. 1982). The instant case, however, cannot be viewed as an action for judicial review of a Comptroller decision—the plaintiff sought a declaratory judgment *before* the Comptroller acted. Because our decision does not rest on the administrative law doctrine of exhaustion, we need not address the plaintiff's claim that an exception to the exhaustion requirement should be found in this case. We will only note that some of the reasons that support the exhaustion of remedies doctrine (i.e. judicial economy, expert and uniform resolution of issues) confirm our view that the district court lacked authority to issue a declaratory judgment before the Comptroller acted on First National and Second National's application to merge. *See generally McKart v. United States,* 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969).

## IV.

The district court's order dismissing the action is affirmed.