**Patrick W. SIMMONS, Petitioner,**

v.

**INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents.**

No. 86–1407.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 20, 1986.

Decided Dec. 22, 1986.

Rehearing Denied Jan. 16, 1987.

Gordon P. MacDougall, Washington, D.C., for petitioner.

Evelyn G. Kitay, I.C.C., Washington, D.C., John H. Doeringer, Chicago, Ill., for respondents.

Before BAUER, Chief Judge, CUMMINGS and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

Petitioner seeks our review of an order in which the Interstate Commerce Commission ("Commission") approved a "pooling agreement" between Illinois Central Gulf Railroad Company and Missouri Pacific Railroad Company. For the reasons which follow, we affirm the agency's order.

## I.

Illinois Central Gulf Railroad Company ("ICG") and Missouri Pacific ("MP") both operate in southern Illinois. Both railroads service the Freeman Orient Mine No. 4, a mine north of Carbondale. The ICG serviced the mine through a northeasterly route between Carbondale, Illinois, and the mine. Another line of the ICG ran through Benton. MP's route ran from Benton, Illinois, south to the mine. The ICG determined that it could serve its clients more efficiently by rerouting its mine traffic to Benton and then using the MP's more direct trackage system to the mine. The MP and the ICG thereafter entered into a pooling agreement whereby the MP would handle the ICG's cars between Benton and the mine track. Since the mine was the sole shipper on the ICG's line between Carbondale and the mine, the pooling agreement meant that the ICG would stop using that portion of its line—approximately 15 miles—during the term of the agreement. The pooling agreement requires the Commission's approval pursuant to 49 U.S.C. § 11342. The Commission gave its approval on September 5, 1985.

Patrick W. Simmons is the Illinois Legislative Director for the United Transportation Union ("UTU"). Simmons objected to the pooling agreement for not adequately protecting railroad employees who would lose their jobs as a result of the ICG's rerouting between Carbondale and the mine.

The Commission is empowered to exempt transactions from regulation under the Act when the transactions are not adverse to transportation policy and are of limited scope or pose no danger of abuse of power by the railroads involved. 49 U.S.C. § 10505(a). The Commission may approve a particular pooling agreement, pursuant to 49 U.S.C. § 11342 if the carriers consent and the agreement is in the interest of better service and will not unreasonably restrain competition. The track line involved here is approximately 15 miles long, has no perceivable anticompetitive effects and will provide more efficient service. Simmons does not contend otherwise.[1] Rather, he argues that the pooling agreement should not have been approved without conditioning approval on the simultaneous submission of an abandonment application which would require labor-protective conditions.

When a railroad abandons track or discontinues service, the Commission will allow an exemption only with certain labor-protective conditions. 49 U.S.C. § 10903. The Commission may impose labor-protective conditions before approving a pooling agreement, but the conditions are not required. Here, the Commission determined that the Union failed to establish the need for labor protective conditions. Simmons argues that because the pooling agreement here affects employees in the same way as an abandonment would, the Commission should have required the ICG to file an abandonment application prior to approval of the pooling agreement. By submitting the pooling agreement first,[2] the ICG did not have to furnish its employees with the labor protections an abandonment proceeding would have required.

The problem with our review of these matters is apparent. This is a petition for review of the Commission's determination to exempt a pooling agreement between the MP and the ICG. Simmons' dispute is not with the Commission's approval of the pooling agreement, at all. Unfortunately, our review is extremely limited. We are to give great weight to an agency's interpretation of the statutes it

---

1. Petitioner questioned for the first time in his reply brief whether the ICG/MP agreement was, in fact, a valid pooling agreement. We deem the issue waived since it was not presented below.

2. Approximately one year later, the ICG did submit an abandonment application for a portion of the track covered by the pooling agreement. The proceeding, however, resulted in protection for only those employees who were injured as a result of the *abandonment*. Thus, employees previously injured by the pooling agreement were unprotected.

enforces. We will uphold an agency's determination unless it is "arbitrary, capricious or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Simmons v. Interstate Commerce Comm'n*, 760 F.2d 126 (7th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). We first address whether Congress "has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781. If the statute is silent or ambiguous, we must determine whether the agency's answer is based on a permissible construction of the statute. *Id.* Thus, our review is limited to asking whether the Commission reasonably construed the statutory scheme to allow a pooling agreement like the one at issue without an accompanying application for abandonment. We can examine only whether the Commission properly concluded that this pooling agreement met the statutory criteria and whether there is any clear directive requiring the Commission to view this rerouting as an abandonment.

■ The Commission's determination that labor conditions were not required is consistent with a plain reading of the statutes involved. Section 11342 does not require labor-protective conditions and clearly applies in this case. Simmons contends that the rerouting should have been considered as an abandonment as well. The Commission rejected this argument, finding that the rerouting was not an abandonment because service to the mine would remain constant. The Commission's determination is reasonable.

A railroad abandons lines when it intends "to cease permanently or indefinitely all transportation service on the relevant lines." *Interstate Commerce Comm'n v. Maine Cent. R.R. Co.*, 505 F.2d 590, 593 (2d Cir.1974). The operative word in this definition, for our purposes, is "service." Service was unaffected by the pooling agreement at issue. The only shipper served before the agreement was the mine and the mine continues to be served by both the MP and the ICG despite the pooling agreement. The Commission need not require an abandonment application unless *service* has been affected. The Commission has reasonably interpreted the statutes. Any further remedy that Simmons desires lies with Congress and not with the courts. The petition for review is

DENIED.