The BLOOMINGTON NATIONAL BANK, Hoosier Bancshares, Inc., Frank A. Rogers, Joseph R. Hartley, Robert W. Linnemeier, Robert D. Mann, and Richard M. Leagre, Plaintiffs and Counter-defendants,

v.

James S. TELFER, Rudolph L. Kuehn, as Executor of the Estate of Sophie T. Kuehn, Robert S. Telfer, Jr., and John T. Barrett, Defendants, Counterclaimants, and Third–Party Plaintiffs,

v.

Robert L. CLARKE, Comptroller of the Currency, Third–Party Defendant.

No. IP 87–636–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 18, 1988.

Ronald E. Elberger, Indianapolis, Ind., for plaintiffs.

Robert L. McLaughlin, Indianapolis, Ind., for defendants.

L. Robert Griffin, Office of the Comptroller of the Currency, Washington, D.C., Deborah J. Daniels, U.S. Atty., Indianapolis, Ind., Harold Bickham, Asst. U.S. Atty., for third-party defendant.

## ENTRY

DILLIN, District Judge.

This cause is before the Court on cross-motions for summary judgment filed by James S. Telfer, Rudolph L. Kuehn, Robert S. Telfer, Jr., and John T. Barrett ("Telfer group") and by Robert L. Clarke, Comptroller of the Currency, as to Count I of the Telfer group's third-party complaint. For the following reasons, the Comptroller's motion for summary judgment is denied, and the Telfer group's motion is granted as against the Comptroller.

### Background

This case arises out of the reorganization and capital restructuring of The Bloomington National Bank ("Bank"), which occurred in the spring of 1986. The following facts are undisputed.

In November 1985, Hoosier Bancshares, Inc. ("Hoosier"), a holding company, owned approximately 91% of the stock of The Bloomington National Bank. The remaining shares were owned by 36 shareholders, including Telfer, Sophie T. Kuehn, Telfer, Jr., and Barrett, the four defendants in this action. The Bank's board of directors, which consisted of plaintiffs Rogers, Hartley, Linnemeier, Mann, and Leagre, determined it would be advantageous for the Bank to become a wholly-owned subsidiary of Hoosier, and proposed a five-step plan to effect this and cash out the minority shareholders. The plan was patterned after similar bank reorganizations that had been approved by the Comptroller of the Currency.

First, Hoosier was to pay the Bank $225,000 as a subscription for 15,000 shares of common stock to be sold to Hoosier as the last step in the plan. Second, the par value of the Bank's 87,000 outstanding shares was reduced from ten dollars to one cent. Third, there would be a reverse stock split at a ratio of 1,500 to one, resulting in the 36 minority shareholders owning in the aggregate 5.19 shares, with each owning only a fractional share. Next, the bank would purchase these fractional shares for $25 per pre-split share, a price determined by an independent appraiser hired by the board. Finally, the Bank would issue the 15,000 shares of new common stock to Hoosier. These transactions were carried out with notice to shareholders and the requisite two-thirds vote of shareholders at a special meeting in March 1986, and resulted in Hoosier owning 100% of the Bank's stock and elimination of the minority shareholders.

In November 1985, the board notified Clarke, Comptroller of the Currency, of its intentions, and the plan and ensuing transactions were ultimately approved by the Comptroller's office as complying with federal banking law, specifically the National Bank Act, 12 U.S.C. § 21 *et seq.*, and its implementing regulations.

In June 1987, plaintiffs—the Bank, Hoosier, and the five directors—filed this action seeking a declaratory judgment that the bank restructuring and related transactions did not violate federal banking laws, federal and Indiana securities laws, or common law fiduciary duties, allegedly in response to a letter from defendants claiming such violations. Defendants filed a counterclaim alleging these precise violations, as well as a third-party complaint against the Comptroller.

Count I of the counterclaim and third-party complaint deals only with the banking law issues. As against the Comptroller, the Telfer group seeks a declaratory judgment that the Bank restructuring violated federal banking law and that the Comptroller therefore exceeded his statu-

tory authority in approving the transactions. Presently before the Court are cross-motions for summary judgment on this portion of Count I filed by the Comptroller and the Telfer group.

### Discussion

The Court has jurisdiction of defendants' claims against the Comptroller in Count I pursuant to the federal Administrative Procedure Act, which provides for judicial review of a claim that one has been adversely affected by final federal agency action "within the meaning of a relevant statute." 5 U.S.C. §§ 702, 704. The Court must decide whether the Comptroller's action was "not in accordance with law, ... contrary to constitutional right, ... [or] in excess of statutory ... authority." *Id.* § 706(2)(A)–(C); *see First Union Bank & Trust Co. v. Heimann,* 600 F.2d 91, 95 (7th Cir.), *cert. denied,* 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979); *Webster Groves Trust Co. v. Saxon,* 370 F.2d 381, 387 (8th Cir.1966) (if Comptroller "acts in excess of his statutory grant of power" or violates the Constitution, he is "subject to restraint by the courts").

Summary judgment, pursuant to Rule 56, F.R.Civ.P., is proper only when there is no genuine issue of material fact, and the claim may be decided as a matter of law. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). The Court finds that with respect to these cross-motions for summary judgment on Count I, there is no dispute on the facts of the Bank's capital reorganization and the Comptroller's approval. Thus, because the only issue is a question of law—whether the transactions violated federal banking statutes or the Constitution or exceeded the Comptroller's statutory authority— summary judgment is appropriate.

The Telfer group argues that the Bank's purchase of the stock of minority shareholders violated 12 U.S.C. § 83, which provides in pertinent part:

> No [national banking] association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any

such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously acquired in good faith....

The Comptroller argues that another banking statute, 12 U.S.C. § 59, which permits a national bank to remit cash to shareholders in reducing its capital, applies instead. This statute provides:

> Any association formed under this chapter may, by the vote of shareholders owning two-thirds of its capital stock, reduce its capital to any sum not below the amount required by this chapter to authorize the formation of associations; but no such reduction shall be allowable which will reduce the capital of the association below the amount required for its outstanding circulation, nor shall any reduction be made until the amount of the proposed reduction has been reported to the Comptroller of the Currency and such reduction has been approved by the said Comptroller of the Currency and no shareholder shall be entitled to any distribution of cash or other assets by reason of any reduction of the common capital of any association unless such distribution shall have been approved by the Comptroller of the Currency and by the affirmative vote of at least two-thirds of the shares of each class of stock outstanding, voting as classes.

12 U.S.C. § 59.

In addition, the Comptroller cites the following portion of a 1967 Federal Reserve Board opinion letter.

> In the opinion of the Board of Governors, the provisions of section 5201 [12 U.S.C. § 83] do not apply to acquisition by a bank of outstanding shares of its capital stock for the purpose of immediate retirement. Such acquisition and retirement constitute a reduction of capital stock, and the National Bank Act (R.S. 5143; 12 U.S.C. 59) and the Federal Reserve Act ... permit reduction of the capital stock of national banks and member State banks, respectively, with supervisory approval. In other words, section 5201 [12 U.S.C. § 83] does not apply to a bank's acquisition of shares of its own

stock as one step in the reduction of capital; this type of transaction is governed, instead, by the provisions of Federal banking law cited in the previous sentence. The purpose of [12 U.S.C. § 83] is to prevent an unauthorized reduction of a bank's capital cushion, and that danger is not present when a bank's capital is to be reduced with the approval of the appropriate federal supervisory authority.

Ltr.Rul., 5 Banking L.Rep. (CCH) ¶ 94,733 (Aug. 14, 1967). The Comptroller contends that because the Bloomington Bank restructuring involved a reduction in capital, 12 U.S.C. § 59 governs the transactions and 12 U.S.C. § 83 does not apply.

Reviewing the documents submitted by The Bloomington National Bank to the Comptroller requesting his approval of the restructuring and the Comptroller's January 14, 1986, analysis of the plan, the Court finds it is clear that the entire purpose of the five-step plan was not to reduce the Bank's capital, but to squeeze out the minority shareholders by forcing them to sell their stock to the Bank. The Comptroller's summary of the proposal does not even mention a reduction in capital. As the Telfer group points out, the major reduction in capital occurred at step five, when the Bank switched its subscription and capital over par accounts, but this step had nothing to do with the Bank's purchase of minority shares. Thus, the Court finds that just because a reduction in capital was somehow involved in the plan does not mean that 12 U.S.C. § 59 supersedes 12 U.S.C. § 83 and legitimizes a purchase that is otherwise in violation of 12 U.S.C. § 83.

The Comptroller further argues that, as the administrator charged with implementing the National Bank Act, his interpretation of the statutes is entitled to deference. However, as the Supreme Court noted in *Investment Company Institute v. Camp*, 401 U.S. 617, 627–28, 91 S.Ct. 1091, 1097–98, 28 L.Ed.2d 367, 376–77 (1971), courts need not defer to the Comptroller's approval of a bank's proposal when the Comptrol-

ler does not address the relevant statute in giving his approval. The three interpretive letters in which the Comptroller approved other bank reorganizations along similar lines do not consider whether or how a bank's purchase of its own shares in a minority squeeze out complies with 12 U.S.C. § 83. *See* Letter No. 313, [1985–1987 Transfer Binder] Banking L.Rep. (CCH) ¶ 85,483 (Oct. 22, 1984); Letter No. 275, [1983–85 Transfer Binder] Banking L.Rep. (CCH) ¶ 85,439 (Oct. 21, 1983); Letter No. 264, [1983–1985 Transfer Binder] Banking L.Rep. (CCH) ¶ 85,428 (Aug. 4, 1983). Similarly, the Comptroller's January 14, 1986, memo analyzing the proposed Bloomington Bank squeeze out does not interpret 12 U.S.C. § 83 in relation to the transaction, but focuses only on how the transaction complies with 12 U.S.C. §§ 51 and 52. In view of the Comptroller's failure to address 12 U.S.C. § 83 when he approved the Bank's purchase of its own stock, the Court is not persuaded by the Comptroller's post hoc explanation of why this statute does not apply.

Finally, the Comptroller contends these transactions should not be found illegal because they were fair to the minority shareholders, pointing out that modern state corporation statutes, for example Del. Code Ann. tit. 8, § 253 (1983), commonly provide for a short form merger eliminating minority shareholders without shareholder approval when a parent corporation owns most of a subsidiary. The Court notes that the new Indiana Business Corporation Law has such a short form merger provision, permitting a 90% owner to merge out minority shareholders, apparently without appraisal rights. *See* Ind.Code §§ 23–1–40–4, 23–1–44–8 (Supp.1988). However, the Court also notes that banking institutions are fundamentally different from ordinary corporations, which is why banks are separately regulated. Thus, the Indiana Financial Institutions Act, which regulates state banks, provides for appraisal rights for dissenting minority shareholders, *see id.* § 28–1–7–21.[1] Neither it nor

---

1. This statute provides in pertinent part:

(d) If within the period of thirty [30] days a dissenting shareholder and the surviving or

the National Bank Act contains a short form merger provision.

Looking at the Bloomington Bank restructuring and related transactions and at the provisions of the National Bank Act which the Comptroller alleges permitted this, the Court finds that by a creative combination of a statute (12 U.S.C. § 59), a regulation (12 C.F.R. § 7.6040), and a Federal Reserve Board private letter ruling, the Comptroller has in effect incorporated a short form merger provision into the National Bank Act. But that is not his job—that is the job of Congress.

Other sections of the National Bank Act make it clear that Congress is concerned with protecting the interests of minority shareholders in a bank and that when minority shareholders are in a position to be eliminated, Congress intends for them to have appraisal rights. *See* 12 U.S.C. §§ 214a–215a.[2] As reflected in *Beerly v. Department of the Treasury*, 768 F.2d 942 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 301 (1986), and in *Nehring v. First DeKalb Bancshares, Inc.*, 692 F.2d 1138 (7th Cir.1982), these sections of the Act provide a way for a national bank that wants to become a wholly-owned subsidiary of a holding company to do so and cash out minority shareholders in full compliance with the law. However, a restructuring pursuant to 12 U.S.C. § 215a requires that dissenters have appraisal rights. Because the Bloomington Bank's plan, apparently suggested by the Comptroller's interpretive letters, avoided such appraisal rights contrary to the clear intent of Congress, the Court finds that the

five step plan here was, at best, a clever little scheme having only the color of legality and cannot be upheld.

Accordingly, the Court finds that the Bloomington Bank restructuring violated federal banking law, specifically 12 U.S.C. § 83, and that the Comptroller, in approving the plan, exceeded his statutory authority and acted not in accordance with law. The Telfer group's motion for summary declaratory judgment as against the Comptroller on Count I of their third-party complaint is therefore granted, and the Comptroller's motion for summary judgment is denied.

new corporation do not so agree [on the value of the shares], then either the corporation or the dissenting shareholder may file a petition in any circuit or superior court in the county in this state where the principal office of the corporation is located requesting that the court determine the value of the shares. Ind.Code § 28–1–7–21(d).

**2.** For example, 12 U.S.C. § 215a provides in pertinent part:

(c) Valuation of shares

The value of the shares of any dissenting shareholder shall be ascertained, as of the effective date of the merger, by an appraisal made by a committee of three persons, com-

posed of (1) one selected by the vote of the holders of the majority of the stock, the owners of which are entitled to payment in cash; (2) one selected by the directors of the receiving association; and (3) one selected by the two so selected. The valuation agreed upon by any two of the three appraisers shall govern. If the value so fixed shall not be satisfactory to any dissenting shareholder who has requested payment, that shareholder may, within five days after being notified of the appraised value of his shares, appeal to the Comptroller, who shall cause a reappraisal to be made which shall be final and binding as to the value of the shares of the appellant.