**BLOOMINGTON NATIONAL BANK, Hoosier Bancshares, Incorporated, Frank A. Rogers, Joseph R. Hartley, Robert W. Linnemeier, Robert D. Mann and Richard M. Leagre, Plaintiffs–Appellants,**

v.

**James S. TELFER, Rudolph T. Kuehn, as Executor of the Estate of Sophie T. Kuehn, Robert S. Telfer, Jr. and John T. Barrett, Defendants/Counterclaimants and Third–Party Plaintiffs–Appellees,**

v.

**Robert L. CLARKE, Comptroller of the Currency, Third–Party Defendant–Appellee.**

No. 89–3707.

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1990.

Decided Oct. 31, 1990.

Theodore J. Nowacki, Ronald E. Elberger, Bose, McKinney & Evans, Indianapolis, Ind., for plaintiffs-appellants.

Robert L. McLaughlin, Wooden, McLaughlin & Sterner, Indianapolis, Ind., for defendants/counterclaimants and third-party plaintiffs-appellees.

Yvonne D. McIntire, Comptroller of the Currency Enforcement & Compliance Div., Washington, D.C., for third-party defendant-appellee.

Before BAUER, Chief Judge,
COFFEY, Circuit Judge, and SNEED,
Senior Circuit Judge.[*]

SNEED, Senior Circuit Judge.

Bloomington National Bank (Bloomington) appeals in its suit against James S. Telfer, Rudolph L. Kuehn, Robert S. Telfer, Jr., and John T. Barrett (the Telfer group) for a declaration that its reorganization plan was authorized by federal law. In rendering summary judgment for the Telfer group, the district court ruled that Bloomington violated the National Banking Act, 12 U.S.C. § 21 *et seq.*, by repurchasing its own stock and failing to provide Telfer with appraisal rights. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

The facts in this case are not in dispute. In November 1985, Bloomington, a national banking association chartered by the Comptroller of the Currency (Comptroller) under the National Banking Act (Act), initiated a plan to become a wholly owned subsidiary of Hoosier Bancshares, Inc. (Hoosier), an Indiana holding company. At that time Hoosier owned 90.85 percent of Bloomington's stock. Appellees and thirty-two other minority shareholders owned the remaining 9.15 percent of the outstanding shares.

In a letter to the Comptroller dated November 27, 1985, Bloomington outlined a five-step plan to effect the reorganization and to cash out the minority shareholders. Bloomington patterned this plan after similar bank reorganizations that had been approved by the Comptroller.

First, Hoosier would pay Bloomington $225,000 as a subscription for fifteen thousand shares of common stock that would be sold after a reverse stock split. Second, the bank would amend its articles of association to reduce the par value of its outstanding stock from ten dollars to one cent per share, thereby reducing the aggregate par value of the outstanding shares from $870,000 to $870. The difference between the two amounts would be retained in a capital-over-par account.

The third step required the bank's authorization of a reverse stock split under which Bloomington would issue one new share of common stock for every fifteen hundred shares of old outstanding common

---

[*] Hon. Joseph T. Sneed, of the Ninth Circuit, sitting by designation.

stock. After the split, Hoosier would own 52.81 shares and the thirty-six minority shareholders would hold 5.19 shares with each minority shareholder possessing a fractional share. Bloomington would then eliminate the fractional share interests by purchasing them for twenty-five dollars per old share. Bloomington's board of directors had adopted this price after reviewing a study conducted by an investment banking firm retained by the bank.

Finally, with all the old shares in its possession, Bloomington would then issue fifteen thousand new shares of stock to Hoosier pursuant to the subscription price agreement. Hoosier would then become a 100 percent owner of Bloomington.

Federal banking statutes and regulations required the bank to obtain the Comptroller's approval for this transaction. Bloomington received preliminary approval on February 12, 1986. Bloomington then certified to the Comptroller, by letter of April 4, 1986, that two-thirds of the shareholders had approved the amendments to the articles of association necessary to carry out the transaction. The Comptroller authorized the deal on April 17, 1986 and the restructuring plan went into effect.

On June 16, 1987, Bloomington and its directors filed suit seeking a declaratory judgment that the bank restructuring plan and related transactions did not violate federal banking laws, federal and Indiana securities laws, or common law fiduciary duties. This was apparently in response to a letter from the appellees claiming such violations. The Telfer group filed a counterclaim arguing that Bloomington had breached its fiduciary duty and violated federal and state securities laws as well as the National Banking Act. The Telfer group added the Comptroller as a third-party defendant and claimed that he had exceeded his statutory authority in approving a reorganization plan that violated the Act.

The district court rendered summary judgment for Telfer on November 18, 1988 on the cross-claim against the Comptroller. The court ruled that Bloomington's plan violated 12 U.S.C. §§ 83 & 214a–215a

(1988), and that the Comptroller exceeded his authority by approving the plan. *Bloomington Nat'l Bank v. Telfer*, 699 F.Supp. 190, 194 (S.D.Ind.1988). Although Telfer's first motion against the Comptroller also sought judgment against Bloomington, the bank did not respond to the motion. The Comptroller did not appeal the district court's decision.

On June 30, 1989, Bloomington filed a motion for partial summary judgment on the issue of whether the restructuring plan violated section 83. The district court denied this motion. Instead, the court granted Telfer's motion for summary judgment, finding that "the Bank has merely restated the arguments previously advanced by the Comptroller in support of the restructuring plan which were rejected by the Court." Appellant's Brief at A15. On November 27, 1989, Bloomington and Telfer filed a joint stipulation with the district court which, among other things, dismissed with prejudice the securities fraud and breach of fiduciary duty claims. The parties also agreed on the judgment to be entered. Accordingly, on November 29, 1989, the district court entered final judgment in favor of Telfer in the amount of $246,632.[1] This appeal followed. This court has jurisdiction under 28 U.S.C. § 1291 (1988).

## II.

## STANDARD OF REVIEW

Review of a district court's grant of a summary judgment motion is de novo. *See Wolf v. Larson*, 897 F.2d 1409, 1411 (7th Cir.1990). Therefore, this court sits in the same position as the district court and applies the same summary judgment test that governs the district court's decision. *See Commercial Union Ins. Co. v. Ramada Hotel Operating Co.*, 852 F.2d 298, 300 (7th Cir.1988). There is no dispute as to the material facts in this case. Our inquiry focuses only on whether the district court erred in finding that Telfer was entitled to summary judgment as a matter of law.

---

1. The value of each old share was set at fifty-six    dollars. *See* Appellee's Brief at 5.

## III.

## DISCUSSION

Bloomington's appeal from the district court's summary judgment order raises two questions: (1) Does the reorganization plan violate the National Banking Act? (2) Was the Comptroller's approval of the plan in accordance with the Act or did he exceed his statutory authority? For the reasons set forth below, we find that the plan did violate the National Banking Act and that the Comptroller exceeded his statutory authority in approving the plan.

At the outset we must make one overriding observation about this case. Bloomington's plan, if carried out, would only provide twenty-five dollars per share to each minority shareholder. That price is in significant contrast to the fifty-six dollar per share price stipulated by the parties at this time. Accepting the new figure as valid, it becomes readily apparent that Bloomington seriously misjudged the value of its stock. It is also apparent that Bloomington and Hoosier would reap profits exceeding $130,000 if their plan were upheld.[2] The gross disparity in the share values strongly suggests that this reorganization plan be examined very carefully.

A. *Bloomington's Plan and the National Banking Act*

■ The district court concluded that Bloomington's plan violated sections 83 and 214a–215a of the National Banking Act. *Bloomington*, 699 F.Supp. at 194; *see also* Judgment of Nov. 8, 1989, Appellant's

Brief at A17.[3] Section 83 of the National Banking Act provides:

No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith....

12 U.S.C. § 83 (1988); *see also Deitrick v. Greaney*, 309 U.S. 190, 194, 60 S.Ct. 480, 482, 84 L.Ed. 694 (1940) (noting, in dicta, that section 83 "prohibits the purchase by a bank of its own shares of stock and their retention when purchased").

Sections 214a thru 215a all provide protection to minority shareholders when their bank is merged or consolidated with another association. *See* 12 U.S.C. §§ 214a–215a (1988). The courts have previously recognized Congress's interest in protecting the rights of a bank's minority shareholders. Congress has provided appraisal rights to those stockholders when attempts are made to eliminate them. *See Beerly v. Department of the Treasury*, 768 F.2d 942, 944–45 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 301 (1986); *Nehring v. First DeKalb Bancshares, Inc.*, 692 F.2d 1138, 1141–42 (7th Cir.1982).

Bloomington's reorganization plan clearly violates the National Banking Act. The bank's reacquisition of capital stock, at a price significantly lower than the current stipulated value, combined with an avoidance of appraisal rights for the minority shareholders, is not in accordance with sections 83 and 214a–215a of the National Banking Act.[4] Bloomington has attempted

---

**2.** After summary judgment was entered against Bloomington, the parties agreed to a stipulation of damages for the purpose of appeal. The parties agreed that Bloomington would pay fifty-six dollars for each of the 4,297 shares held by the appellees. The bank also agreed to pay six thousand dollars in prejudgment interest. Total damages were set at $246,632. *See* Joint Stipulated Motion to Dismiss Certain Claims and Counterclaims with Prejudice at 3. The thirty-one dollar difference between the two values ($56 and $25) multiplied times the 4,297 shares equals $133,207.

**3.** The district judge signed a second judgment entry on November 29, 1989, which only men-

tions section 83. However, given that the district judge relied on sections 214a–215a in his dismissal of the Comptroller and Bloomington's motions for summary judgment, and because the facts of this case implicate sections 83 and 214a–215a, we consider all of these sections of the Act in our decision.

**4.** We specifically decline to answer the broader question of whether section 83 prohibits *any* reacquisition by a bank of its own capital stock. Our holding in this case is limited to the facts stated herein.

to do nothing more than squeeze-out the minority shareholders by repurchasing its stock and reducing it to fractional shares through a reverse stock split, thereby necessitating the bank's purchase of the fractional shares. The district court correctly concluded that the bank's plan "was, at best, a clever little scheme having only the color of legality and cannot be upheld." *Bloomington,* 699 F.Supp. at 194.

Bloomington attempts to defend its plan by invoking section 59 of the Act. Section 59 states:

> Any association formed under [this chapter] may, by the vote of shareholders owning two-thirds of its capital stock, reduce its capital to any sum not below the amount required by [this chapter] to authorize the formation of associations; but no such reduction shall be allowable which will reduce the capital of the association below the amount required for its outstanding circulation, nor shall any reduction be made until the amount of the proposed reduction has been reported to the Comptroller of the Currency and such reduction has been approved by said Comptroller of the Currency and no shareholder shall be entitled to any distribution of cash or other assets by reason of any reduction of the common capital of any association unless such distribution shall have been approved by the Comptroller of the Currency and by the affirmative vote of at least two-thirds of the shares of each class of stock outstanding, voting as classes.

12 U.S.C. § 59 (1988). Bloomington's reliance on this section is misplaced. Section 59's allowance for a reduction in capital cannot be utilized as a means to legitimate a plan that otherwise violates the Act. This is especially true where the reduction in capital that occurred in the second step of the reorganization had little or nothing to do with the overall plan. Bloomington and the Comptroller both indicated in their correspondence that the central purpose of the reorganization plan was to effectuate Hoosier's full ownership of the bank by eliminating the minority shareholders. *See* Letter from John R. Zerkle to Leann Britton, Comptroller of the Currency (Nov. 27, 1985), Appellee's Brief at exh. A; Memorandum from David J. Rogers to Richard F. Coe (Jan. 14, 1986), Appellee's Brief at exh. B. The reduction in capital was only a means to achieve that end. The bank will not be allowed to invoke section 59 of the Act to effectuate its elimination of the minority shareholders' interests.

### B. *The Comptroller's Authority to Approve Bloomington's Plan*

■ Bloomington next argues that the Comptroller's interpretation is entitled to extreme deference. The Comptroller made this same argument in his motion for summary judgment and the district court rejected it.

The Comptroller's authority is limited. Normally, courts will defer to an agency's interpretation of federal law. *See City Fed. Savings & Loan Ass'n v. Federal Home Loan Bank Bd.,* 600 F.2d 681, 688 (7th Cir.1979); 5 U.S.C. § 706(2)(A) (1988). But there are limits on the Comptroller's authority. In *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court established a two-prong test for evaluating an agency's interpretation of federal law. If the intent of Congress is clear the court and the agency must give effect to the expressed intent of Congress. *See id.* at 842–43, 104 S.Ct. at 2781–82. If, on the other hand, the court determines that the statute is silent or ambiguous, then the court should impose its view of the law only if the agency's view is based on an impermissible interpretation of the relevant statute. *See id.* at 843, 104 S.Ct. at 2782; *see also Simmons v. ICC,* 808 F.2d 22, 24 (7th Cir.1986) (following the Supreme Court's two-part test in *Chevron* ).

We find that the National Banking Act clearly prohibits a reorganization plan, which necessitates a reacquisition of stock in violation of section 83 and fails to provide the appraisal rights required by sections 214a–215a. The requisite silence or ambiguity that might require our deference to the Comptroller's interpretation is not present in this case.

Moreover, the Comptroller failed to consider sections 83 and 214a–215a when he gave his approval to the bank's plan. The Comptroller relied solely on section 59. None of the Comptroller's interpretive letters, in which he approved similar bank reorganizations, mentions or considers the other relevant portions of the Act. *See Bloomington*, 699 F.Supp. at 193; *see also* Letter No. 313, [1985–1987 Transfer Binder] Fed.Banking L.Rep. (CCH) ¶ 85,483 (Oct. 22, 1984); Letter No. 275, [1983–1985 Transfer Binder] Fed.Banking L.Rep. (CCH) ¶ 85,439 (Oct. 21, 1983); Letter No. 264, [1983–1985 Transfer Binder] Fed. Banking L.Rep. (CCH) ¶ 85,428 (Aug. 4, 1983). While the Comptroller later advanced additional reasons for his decision, the district court correctly rejected these post hoc explanations. *See Bloomington*, 699 F.Supp. at 193. The Comptroller is in a position to interpret federal banking laws, but his interpretation can be overturned if he ignores or overlooks relevant portions of the law. *See Investment Co. Inst. v. Camp*, 401 U.S. 617, 627–28, 91 S.Ct. 1091, 1097–98, 28 L.Ed.2d 367 (1971).

Bloomington attempts to argue that the district court should have given precedential weight to the Comptroller's three interpretive letters.[5] These interpretations are not binding on courts. *See Bright v. Ball Memorial Hosp. Ass'n*, 616 F.2d 328, 331 n. 1 (7th Cir.1980). These agency constructions are subject to the same type of review as the Comptroller's decision in this case. We will not defer to these letters when they contravene the clear intent of Congress. *See Zuber v. Allen*, 396 U.S. 168, 192–93, 90 S.Ct. 314, 327–28, 24 L.Ed.2d 345 (1969).

Finally, Bloomington attempts to save its plan by minimizing the need to protect minority shareholders' appraisal rights. Bloomington points to the Indiana Business Corporation Law, which permits short form mergers that squeezeout minority share-

holders. Ind.Code Ann. §§ 23–1–25–4(a) & 23–1–38–2(4) (Burns 1989). Reliance on state corporation laws is irrelevant to this case. National banks are subject to the National Banking Act. Bloomington's plan to reorganize the bank clearly violated several sections of that Act. That Act is the supreme law of the land in this case.

AFFIRMED.

---

5. Bloomington also directs our attention to a Federal Reserve Board Private Letter Ruling. *See* 5 Fed. Banking L.Rep. ¶ 94,733 (Aug. 14, 1967). The letter ruling concludes that a bank's acquisition of stock for the purpose of retirement constitutes a capital reduction in accord-

ance with section 59. The Board stated that section 83 did not bar this transaction. *See id.* at 79,772. We do not rule on the correctness of this decision, we simply note that it is inapplicable to the facts in this case.