**In re Harley G. HALL f/d/b/a Hall Grain Company, Debtor.**

**Bankruptcy No. X86–00829S.**

United States Bankruptcy Court, N.D. Iowa, W.D.

April 14, 1989.

Timothy Jarman, Sioux City, Iowa, for debtor.

Sam Killinger, Sioux City, Iowa, for Jerry Cowan.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER RE: JERRY COWAN OBJECTION TO REPORT ON CLAIMS

WILLIAM L. EDMONDS, Bankruptcy Judge.

This contested matter proceeding involves an objection by creditor Jerry Cowan to the final claims report. Hearing was held on April 6, 1989 in Sioux City, Iowa. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### FINDINGS OF FACT

The chapter 11 liquidation plan of debtor Harley G. Hall (HALL) was confirmed by order and judgment entered March 31, 1989. On January 19, 1989, Hall filed a report on claims. Cowan objected to the treatment of his claim.

Debtor is a retired grain merchant. Some of the claims filed in the case are claims filed by farmers who sold crops to the debtor but who were unpaid at the time

of the filing of the bankruptcy case. These claimants included Jerry Cowan.

Cowan filed a proof of claim in the amount of $146,280.75. The claims report recommended allowance of the claim for $65,336.35 and objected to the excess. The explanation by the debtor was as follows: "This creditor filed a claim for $146,280.75; the claim does not contain a statement of claim and has inadequate documentation; debtor disputes the amount of the creditor's filed claim and recommends disallowance of that portion of the claim in excess of $65,336.35."

Also filing a proof claim in the bankruptcy case was Farmland Mutual Insurance Co., Hall's bonding company. This creditor filed a proof of claim in the amount of $50,000 seeking recovery from the debtor of bond payments made by Farmland to creditors such as and including Cowan. The claims report of the debtor recommends allowances in full of the $50,000.00 unsecured claim. No objections to this claim have been filed.

Cowan filed a bond claim with Farmland Mutual Insurance Co. (FARMLAND) in the amount of $79,041.28. Based on this claim and under the bond, Farmland on June 7, 1985 paid Cowan $13,704.93. Farmland apparently had a $50,000.00 limit on Hall's bond and paid the full amount pro rata to seventeen creditors making bond claims.

Hall calculates Cowan's claim in two ways. First, Hall argues that Cowan should be bound in the bankruptcy to the amount of the claim he filed with the bonding company and therefore the starting point for Cowan's bankruptcy claim should be $79,041.28. Hall argues that the amount of the bond payment ($13,704.93) should be subtracted from $79,041.28 and therefore the allowed unsecured claim of Cowan should be $65,336.35.

Alternatively, Hall calculates Cowan's claim as follows: Cowan delivered to Hall 13,899.75 bushels of soybeans. The price to be paid by Hall was $5.865 per bushel determined by subtracting 2¢ per bushel from Cargill, Inc.'s base price of $5.885 per bushel of beans. Hall testified that it was his custom and practice with regard to this type of transaction to subtract 2¢ per bushel from the Cargill base price as a grain fee to compensate for bookkeeping and other expenses. Hall's starting price, therefore, is $81,522.03. That amount is then reduced by Hall for various reasons. The sum of $252.95 is subtracted for quality discounts including damaged beans, excess moisture content, musty product, and low weight. The deductions were substantiated by Hall in exhibits E and F, with exhibit F including the weight tickets on the soybeans and the grain inspection certificates. Hall subtracts also a 1% soybean tax in a total amount of $139.00 plus a service charge of $2,918.95. According to Hall and his bookkeeper, the service charge was a normal reduction and was part of the agreement as substantiated by his general practice and his dealings with Cowan. The service charge was arrived at by multiplying the number of bushels times 2.4¢ per month. This is a service charge exacted from the time of delivery to Cargill until Hall would pay Cowan for the soybeans. Normally this payment date would be a sale date chosen by Cowan.

In this case, it was determined by the date of the revocation of Hall's grain license which was September 20, 1984. Iowa Code § 542.15(6).

If these deductions are allowable, they result in a balance due from Hall to Cowan as of the date of revocation of $78,211.13. Hall argues that Cowan is not entitled to interest on that amount.

Cowan no longer asserts $146,280.75 as his claim. He contends that he is entitled to payment for 13,899.75 bushels but at the rate of $5.885 per bushel without any deduction for Hall's grain fee. Cowan also argues that the 2.4¢ per bushel service charge is actually a storage fee and since the grain was stored only 19 days, there should be a service charge deduction of only $211.28.

Cowan also says that he is entitled to interest at 5% per annum on the amount due pursuant to Iowa Code § 535.2(1)(b). He, therefore, says he is entitled to a claim of $87,710.71.

As to the interest argument, Hall responds that no other similarly situated farmers had their claims calculated with interest following the revocation date and that therefore would be a windfall to Cowan if he would receive interest after September 20, 1986 and until the date of bankruptcy.

Farmland paid Cowan $13,704.93 on his bond claim on June 7, 1984. Cowan argues that this payment should not be subtracted from his claim.

The court, having examined the evidence and heard the testimony of both Mr. Cowan and Mr. Hall, finds:

(a) That the agreement between the parties and the practice of Hall contemplated a price per bushel for the soybeans of $5.865 per bushel derived from Cargill, Inc.'s base price less Hall's grain fee of 2¢ per bushel.

(b) The discounts for quality were contemplated by the agreement of the parties and the practice of the industry are warranted by the evidence in this case and were appropriate in the amount of $252.95.

(c) The 1% soybean tax in the amount of $139.00 was required and appropriate.

(d) A service charge in the amount of $2,918.95 was contemplated by the agreement of the parties, the general custom and practice of Hall and was reasonable and appropriate.

(e) As of September 20, 1984, Hall was indebted to Cowan for the sale of soybeans in the amount of $78,211.13.

Interest on that amount from and including October 21, 1984 to June 6, 1985, the date of the bond payment, at the rate of 5% per annum was $2,452.59. The bond payment reduced Cowan's loss to $66,958.79 on the day of payment. Interest on that amount at 5% per annum to to April 10, 1986 was $2,824.36. Cowan's claim on April 11, 1986 was $69,783.15.

## DISCUSSION AND CONCLUSIONS OF LAW

■ The court concludes that Hall was indebted to Cowan for the purchase of soybeans as of September 20, 1984 in the amount of $78,211.13. The court further concludes that Cowan is entitled to interest on this amount at 5% per annum from October 20, 1984 to but not including April 11, 1986. The start date is mandated by the last date upon which the money must be paid pursuant to Iowa Code § 542.15(6). This date is 30 days after the effective date of the revocation of Hall's license.

The 5% figure is derived from Iowa Code § 535.2(1)(b). This Iowa Code section provides interest at 5% per annum on money after the same becomes due.

Debtor argues that it would be a windfall to Cowan if he obtains interest on his claim because creditors similarly situated to Cowan did not have their claims calculated and allowed by the debtor with interest. If they were not so calculated, the failure of those creditors to object to the claims report should not prevent Cowan from pursuing his objection. The debtor has cited to the court no authority under either bankruptcy or state law which would deny Cowan interest to the date of filing. Debtor has advanced equitable arguments, but this court does not believe it is equitable to deny Cowan his claim for interest merely because other creditors were not so diligent as he.

■ Debtor argues that whatever the amount of the allowed claim as of the date of bankruptcy, it should be reduced by the payment by Farmland, the bonding company. This court examined 11 U.S.C. § 509 and § 502(e)(1) and agrees.

It was presumed by the parties and will be presumed by this court that under state law Farmland would have a subrogation claim against Cowan if Cowan would recover from the debtor. Reading 11 U.S.C. §§ 502(e)(1)(C) and 509 together, this court must conclude that while Farmland may have a right of subrogation against Cowan both under state law and bankruptcy law, it may choose either to assert its claim as a claim of subrogation against Cowan or as a claim in the bankruptcy case. Farmland has filed a claim against the debtor for $50,000.00 including the $13,704.93 paid to Cowan.

That claim is allowed. However, if the payment from Farmland to Cowan were not deducted from Cowan's claim, the distribution to other creditors would be diminished because the debtor would be paying a dividend twice on the same $13,704.93.

 The court is convinced that to permit Farmland's claim to share on equal footing with Cowan's would be to do an injustice to the farmers intended to benefit from the bond. The effort to prevent such an injustice is codified in 11 U.S.C. § 509(c). *American Surety Co. of New York v. Sampsell,* 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663 (1946) *aff'g. American Surety Co. of New York v. Sampsell,* 148 F.2d 986 (9th Cir.1945); *American Surety Co. v. Westinghouse Electric Mfg. Co.,* 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105 (1935); *Fisher v. The Outlet Co. (In re Denby Stores, Inc.),* 86 B.R. 768, 779 (Bankr.S.D.N.Y. 1988).

It is the obligation of the bonding company to make good the loss to Cowan. There is no reason why Farmland should share in any dividend in this bankruptcy estate unless and until Cowan and perhaps similarly situated creditors have been compensated in full for their loss.

Debtor estimates a 60% dividend to unsecured creditors in this case. In examining debtor's exhibit A and particularly the attachment thereto, the court believes the $13,704.93 bond payment plus his dividend will not make Cowan whole. Until Cowan, as a beneficiary of the bond is paid in full, there is no reason why Farmland should receive a dividend, at least on the $13,-704.93 portion of its claim. It contracted with Hall to protect sellers of grain. Bankruptcy should not place Farmland in a better position *vis a vis* the farmers than it would have been outside bankruptcy.

What is more, under the facts of this case, subordination of all or a part of Farmland's allowed unsecured claim may be *mandatory.* Farmland, however, is not before the court and the court will not issue an order of subordination even if mandatory, without the opportunity of Farmland to defend its position.

This, however, should not delay the issuance of an order of this court determining the allowed unsecured claim of Cowan. Therefore, the court concludes that Cowan's allowed unsecured claim on the date of bankruptcy is $69,783.15.

Cowan will have fourteen days from the date of this order to file a motion seeking subordination of all or a part of Farmland's claim under 11 U.S.C. § 509(c).

IT IS ORDERED that the allowed unsecured claim of Jerry Cowan is $69,783.15. Jerry Cowan will have fourteen days from the date of this order to file a motion seeking subordination of all or a part of the allowed unsecured claim of Farmland Mutual Insurance Co.

SO ORDERED.