NoDAK BANCORPORATION, a North Dakota corporation, Plaintiff and Appellant,

v.

F.L. CLARKSON, Ralph Roshau, Kenneth Mann, James Tracy, Robert D. Tracy, Alan Hann, Liberty National Bank and Trust Company and Dickinson Bancorporation, Defendants and Appellees.

Civ. No. 900396.

Supreme Court of North Dakota.

June 3, 1991.

Lamb, McNair, Larson & Carlson, Ltd., Fargo, for plaintiff and appellant; argued by Bruce H. Carlson. Appearance by David J. Hauff.

Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, for defendants and appellees; argued by Paul G. Kloster. Appearance by Timothy A. Priebe.

LEVINE, Justice.

NoDak Bancorporation (NoDak) appeals from a district court judgment dismissing its action against F.L. Clarkson, Ralph Roshau, Kenneth Mann, James Tracy, Robert D. Tracy, Alan Hann, Liberty National Bank and Trust Company (Liberty), and Dickinson Bancorporation (Dickinson Bancorp). We agree with the district court's determination that the subject matter of NoDak's action is preempted by the National Banking Act, 12 U.S.C. § 215a, and we affirm the judgment of dismissal.

Liberty is a national bank chartered by the Comptroller of the Currency. Liberty's principal offices are in Dickinson, North Dakota. Dickinson Bancorp holds approximately 73% of the shares of Liberty; NoDak holds approximately 21% of the shares of Liberty; and the remaining shares are held by a number of individuals. NoDak's chairman, Franklin Larson, holds a seat on Liberty's board of directors.

After Larson left the January 25, 1990, meeting of Liberty's board of directors, the remaining directors unanimously approved a Plan of Reorganization and Merger providing for the formation of a new bank, which would be merged with the existing bank, and providing for the forced sale of all minority shares. The price specified for NoDak stock is $1,644 per share.[1] Under the reorganization plan, Dickinson Bancorp is entitled to exchange its shares of stock in Liberty for shares in the new bank but no similar privilege is granted to minority shareholders.

On February 12, 1990, Liberty initiated a proceeding in the Office of the Comptroller of the Currency for approval of the proposed reorganization and merger. On March 14, 1990, NoDak filed this action in state district court alleging that the defendants had adopted a plan of reorganization and merger which would prevent minority shareholders from exchanging their stock in Liberty for shares in the new bank or in Dickinson Bancorp, which would own all the stock in the new bank, and that the defendants would offer to purchase minority shares for substantially less than the value of the shares. In count one of the complaint, NoDak alleged in part that "[d]efendants conduct toward Plaintiffs with regard to the phantom bank merger constitutes a breach of fiduciary obligations" resulting in damages to NoDak. In count two of the complaint, NoDak sought "a permanent and final injunction preventing the Board of Directors or shareholders from implementing the Plan of Reorganization and Merger." In count three of the complaint, NoDak alleged that Liberty was "significantly overcapitalized" and sought court-ordered dividends. Also, on March 14, 1990, NoDak secured from the state district court an ex parte order, temporarily restraining the defendants "from further pursuing a Plan of Reorganization and Merger of the Liberty National Bank and Trust Company of Dickinson" and ordering the defendants to show cause on April 9, 1990, "why a preliminary injunction should not be issued."

On March 26, 1990, the defendants removed the action to the United States District Court. On April 5, 1990, the defendants filed their answer in federal district court. On April 13, 1990, NoDak moved the federal district court for an order remanding the action to state district court. On June 7, 1990, the federal district court determined that it lacked jurisdiction because the Comptroller had not yet ruled on the proposed reorganization and merger and ordered the action remanded to state district court.

While NoDak's lawsuit challenging the defendants' proposed reorganization and merger was pending in the state and federal district courts, NoDak was also actively participating in the federal administrative proceedings in an attempt to persuade the Comptroller to deny the request for approval of the proposed reorganization and merger. On March 8, 1990, NoDak requested a hearing on the defendants' application for Comptroller approval of the proposed reorganization and merger. On April 2, 1990, NoDak submitted written materials supporting its request that the

1. NoDak contends that its shares have a fair value of at least $2,725 per share.

Comptroller deny the request for approval of the application for reorganization and merger, asserting in part:

"Regardless of the fact that the Plan of Reorganization, in accordance with the requirements of the Federal law, provides a procedure for an appraisal, the minority shareholders do not wish to sell their stock, especially where the sale will prevent them from sharing in future profits, receiving dividends to which they are entitled and, receiving a fair value for their shares of stock. If shares of stock in the Liberty National Bank are to be purchased and sold, the shares should be sold in an open transaction dealing with a willing buyer and willing seller. The Application for Reorganization and Merger should be denied as not supported by valid business purposes and in violation of the fiduciary responsibilities owed by the majority shareholders to minority shareholders."

Thus, NoDak was simultaneously challenging the proposed reorganization and merger in both administrative and judicial proceedings.

On September 13, 1990, the state district court ruled that "this State Court proceeding is at best premature by reason of federal preemption of the subject matter pursuant to provisions of the National Banking Act, 12 U.S.C. Section 215a" and granted the defendants' motion to dismiss. Judgment was entered accordingly and NoDak appealed. The dispositive issue on appeal is whether NoDak's state-based claims for breach of fiduciary duties have been preempted by the federal administrative procedures provided in 12 U.S.C. § 215a for challenging a proposed reorganization and merger.

■ Federal preemption of state law may occur if: (1) Congress explicitly preempts state law; (2) Congress impliedly preempts state law by indicating an intent to occupy an entire field of regulation; or (3) state law actually conflicts with federal law. *State v. Liberty Nat'l Bank & Trust Co.*, 427 N.W.2d 307 (N.D.1988), *cert. denied,* 488 U.S. 956 (1989). The defendants do not contend that, in enacting § 215a, Congress explicitly preempted state law and they abandoned their field preemption claim at oral argument. Thus, we need only determine if judicial resolution of No-Dak's state-based claims for breach of the defendants' fiduciary duties actually conflicts with the administrative procedure in § 215a. "Conflict pre-emption occurs where compliance with both federal and state laws is a physical impossibility or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (Citations omitted). *State v. Liberty Nat'l Bank & Trust Co., supra,* 427 N.W.2d at 309–10.

12 U.S.C. § 215a authorizes national and state banks to merge into a national banking association, with the approval of the Comptroller, upon the affirmative vote of the shareholders of each participating bank owning at least two-thirds of its capital stock outstanding. 12 U.S.C. § 215a also provides that dissenting shareholders may require that they be paid cash for their shares if they wish to surrender their shares [2] and provides procedures for a three-member committee or the Comptroller to appraise the value of their shares. It also provides for the sale at public auction of the surrendered shares of dissenting shareholders and for payment to them of any amount received at the auction above what they had been paid for their shares. In *Bloomington Nat'l Bank v. Telfer,* 916 F.2d 1305, 1308 (7th Cir.1990), the court noted that § 215a provides "protection to

---

**2.** In *Lewis v. Clark,* 911 F.2d 1558, 1560 (11th Cir.1990), the court held that the Comptroller could not approve a merger plan that required minority shareholders to accept cash for their shares and allowed majority stockholders to take stock in the merged bank:

"We can find no authority that permits a majority of the stockholders to freeze out minority shareholders by requiring them to take

cash over their objection thus permitting the majority to become 100% owners of the merged corporation. If minority stockholders object to taking stock in the merged corporation, they can be required to take cash, but when they want stock in the merged corporation, they are entitled to even treatment with all other holders of like stock."

minority shareholders when their bank is merged or consolidated with another association.... Congress has provided appraisal rights to those stockholders when attempts are made to eliminate them."

■ The validity of a merger under 12 U.S.C. § 215a must be determined, in the first instance, by the Comptroller, rather than a district court. *Nehring v. First DeKalb Bancshares, Inc.,* 692 F.2d 1138 (7th Cir.1982). As the court explained in *Nehring, supra,* 692 F.2d at 1142:

"[C]onflict and confusion would inevitably result if parties who oppose mergers of national banks were permitted to eschew Comptroller proceedings in favor of district court actions. *See Whitney National Bank v. Bank of New Orleans and Trust Co.,* 379 U.S. 411, 422, 85 S.Ct. 551, 558, 13 L.Ed.2d 386 (1965). Some merger opponents might bring their objections to the Comptroller while others might seek declaratory or injunctive relief in district courts. The possibilities of different standards, records, and results all lead us to conclude that the district court correctly declined to pass on the propriety of the merger agreement before the Comptroller had acted in this case."

■ The Comptroller's decisions under 12 U.S.C. § 215a are subject to judicial review in the federal courts. *Beerly v. Department of Treasury,* 768 F.2d 942 (7th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 301 (1986). The standard of review is whether the Comptroller's decision was arbitrary, capricious, or unreasonable. *Lewis v. Clark,* 911 F.2d 1558 (11th Cir.1990); *Beerly, supra.*

NoDak mistakenly relies on *Fisher v. Steelville Community Banc-shares, Inc.,* 713 S.W.2d 850 (Mo.App.1986), to support its cause of action in state court. In *Fisher,* the court held that the plaintiff's claims for damages for withholding dividends, thereby diminishing the value of his shares, were not barred by 12 U.S.C. § 215a or his failure to use the administrative procedure provided by 12 U.S.C. § 215a. *In Fisher,* plaintiff did not "seek to enjoin or 'unravel' the merger" (*Id.,* at 853), but sought "dam-

ages by reason of wrongful withholding of dividends and diminution in the value of his shares *before* merger" by "wrongfully withholding dividends for three years" before merger. *Id.,* at 854–55. (Emphasis added.) *Fisher* dealt with an extensive alleged pre-merger breach of fiduciary duties, while in this case NoDak has alleged that the merger is the breach of fiduciary duties. In this case, NoDak did seek to enjoin "the Board of Directors or shareholders from implementing the Plan of Reorganization and Merger." Further, NoDak's dividend complaints dealt, not with a diminution of share value as a result of long-term withholding of dividends, but with its concern that "Defendants will utilize capital in the Bank to purchase the minority shares without having to borrow outside monies" and with its view that the defendants "retained excess capital in the Bank for purposes of fulfilling the ultimate plan of elimination of minority shareholders."

■ The nub of this case is the reorganization and merger sought by the majority shareholders. The question is whether dissenting shareholders must seek relief in administrative proceedings before the Comptroller or if they may seek relief in state district court. "[W]hen two separate remedies are brought to bear on the same activity, a conflict is imminent." *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776,* 346 U.S. 485, 498–99, 74 S.Ct. 161, 170, 98 L.Ed. 228, 244 (1953). In holding that state unfair competition law was preempted because it conflicted with section 30 of the National Bank Act with regard to Comptroller-approved name changes by national banks, the Eighth Circuit Court of Appeals explained:

"If the Comptroller approved a bank's change of name, but a court found the bank liable in an unfair competition suit, the difference in results could only be explained as inconsistent applications of the same standard. The court judgment could, in effect, nullify the Comptroller's discretionary determination under section 30. If state unfair competition law is allowed to apply to name changes by

national banks, such conflicts will be inevitable, not a mere possibility. *See Goldstein v. California,* 412 U.S. 546, 554–55, 93 S.Ct. 2303, 2308–09, 37 L.Ed.2d 163 (1973). As the Supreme Court observed in a slightly different context,

> [a] multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.

*Garner v. Teamsters Local 776,* 346 U.S. 485, 490–91, 74 S.Ct. 161, 166, 98 L.Ed. 228 (1953)."

*North Dakota v. Merchants Nat'l Bank & Trust Co.,* 634 F.2d 368, 382 (8th Cir.1980). Further, as this court observed in *Shark Bros., Inc. v. Cass County,* 256 N.W.2d 701, 705–06 (N.D.1977):

> "We do not favor or encourage, nor can we sustain, bifurcated self-induced or self-initiated procedures, one in the administrative process and one in the judicial process covering the same legal questions.

> "If such bifurcated procedures were encouraged or sustained, it would create duplication, and uncertainty, and waste manpower and money, with no appreciable result, and all without improving the administration of justice. If one side of a proceeding were permitted to proceed both in the administrative channels and the judicial channels at the same time the other side could also resort to the same procedure. The result would be endless confusion, which we can ill afford."

See also *Transportation Division of the Fargo Chamber of Commerce v. Sandstrom,* 337 N.W.2d 160 (N.D.1983).

To allow minority shareholders dissenting from a proposed merger to press their claims in state district court before the Comptroller has ruled on a request for approval or while such a request is pending before the Comptroller, or while a decision by the Comptroller is being reviewed in the federal courts, would invite wasteful expense, delay, and unnecessary conflict between coordinate administrative and judicial decision-makers. A proposed merger could be undergoing challenge in proceedings before the Comptroller and in state and federal trial and appellate courts at the same time. Different proceedings, procedures, standards, and decision-makers would make different results, conflict and confusion inevitable. There would be uncertainty and wasteful duplication of party, agency and judicial resources. There would be a probability of the Comptroller and the state and federal courts all reaching different results, ultimately resulting in unseemly and unnecessary conflict as each properly sought to enforce its determinations. We decline to embark on such a course. We therefore conclude that state law remedies for breach of fiduciary duties arising out of a national bank merger under 12 U.S.C. § 215a are preempted because of conflict with the administrative procedures provided for challenging a merger under that section of federal law. Application of state law remedies for breach of fiduciary duties arising out of a national bank merger "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*State v. Liberty Nat'l Bank & Trust Co., supra,* 427 N.W.2d at 309–10), in enacting 12 U.S.C. § 215a.

■ NoDak contends that its complaint contains a separate cause of action for declaration of a dividend, which involves a breach of fiduciary duty independent of the other breaches alleged in the complaint. NoDak contends that its claim for a dividend is not preempted by 12 U.S.C. § 215a, which, it asserts, "has absolutely nothing to do with declarations of dividends, but relates solely to the merger process," or by any other federal law. A cursory reading of NoDak's complaint,[3] however, reveals

---

**3.** "30.

"If the Plan of Reorganization and Merger is completed, Plaintiff anticipates that the Defendants' will utilize capital in the Bank to purchase the minority shares without having to borrow outside monies. In other words, minority shareholder's stock will be purchased with their own money.

that NoDak's demand for a dividend declaration arose solely out of its disagreement with the majority shareholders' proposed reorganization and merger plan.[4] We believe that the dividend issue is inextricably intertwined with the merger issue which is subject to the administrative procedures provided in § 215a for the approval of the proposed reorganization and merger and the appraisal of the value of NoDak's shares.

Affirmed.

ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., concur.

VANDEWALLE, J., concurs in the result.

"31.

"In further breach of the fiduciary duty owed to minority shareholders, Defendants have failed to authorize the disbursal of appropriate dividends to all shareholders, but have rather retained excess capital in the Bank for purposes of fulfilling the ultimate plan of elimination of minority shareholders. Plaintiff requests that the Court direct the Board of Directors of the Bank to authorize payment of a dividend equivalent to the amount of the capital earmarked for squeezing out the minority shareholders or the approximate sum of $1,845,000.... In addition, Plaintiff requests that the Court direct the Board of Director's of Bank to declare additional dividends to reduce the capital of the Bank to a level of capital held by other Banks as determined according to Uniform Bank Performance Guidelines."

4. Presumably, the complained-of retention of capital increased the value of NoDak's shares. *See Beerly v. Department of Treasury,* 768 F.2d 942 (7th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 301 (1986).