NORTH DAKOTA PUBLIC SERVICE
COMMISSION, Petitioner and
Appellee,

v.

WOODS FARMERS COOPERATIVE
ELEVATOR COMPANY, Leonard,
North Dakota, Respondent and Appellee,

and

Farmland Mutual Insurance Company,
Respondent and Appellant.

Civ. No. 910209.

Supreme Court of North Dakota.

June 11, 1992.

William W. Binek (argued), Asst. Atty. Gen., Public Service Com'n, State Capitol, Bismarck, for petitioner and appellee North Dakota Public Service Com'n.

Kaler Law Office, Fargo, for respondent and appellee Wayne Drewes, as Bankruptcy Trustee for Woods Farmers Co-op. Elevator Co.; argued by Kip M. Kaler.

McNair, Larson & Carlson, Ltd., Fargo, for respondent and appellant Farmland Mut. Ins. Co.; argued by Bruce H. Carlson. Appearance by David J. Hauff.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for amicus curiae St. Paul Bank for Cooperatives; argued by Roger J. Minch.

Lowell P. Bottrell, Anderson & Bailly, Fargo, for amicus curiae Roesler Land & Cattle, Roger McDonald & Carman Lynnes d/b/a Lynnes Farms & Brian McDonald. Brief filed.

David T. DeMars and Jay D. Carlson, DeMars & Turman, Fargo, for amicus curiae James E. Nygard. Brief filed.

ERICKSTAD, Chief Justice.

Farmland Mutual Insurance Company (Farmland), the surety on a warehouseman's bond for Woods Farmers Cooperative Elevator Company (Woods), appealed from a district court judgment requiring it to pay to the North Dakota Public Service Commission (PSC) the sum of $780,000 for the payment of claims in accordance with the PSC's report and recommendation, as amended by the district court. We affirm in part and modify the judgment.[1]

Woods, a licensed grain warehouse, filed a petition for liquidation under Chapter 7 of the Bankruptcy Code on April 13, 1989. Wayne Drewes was appointed trustee of the bankruptcy estate. On May 22, 1989, the bankruptcy court lifted the automatic stay of 11 U.S.C. § 362 to permit the PSC to pursue claims against Woods' warehouseman's bond. On June 7, 1989, the bankruptcy court authorized Drewes to sell the grain in Woods' facilities and to incur reasonable and necessary expenses in selling the grain. Drewes sold the grain for $1,603,459.94. The bankruptcy court authorized Drewes to distribute monies in the grain fund and to withhold fees and expenses totaling $118,781.86, which included trustee fees, attorney fees, a fee to Chafee–Lynchberg Farmers Elevator for assisting in the liquidation of grain, transportation expense, and storage fees.

On November 13, 1989, the district court appointed the PSC as statutory trustee un-

---

1. The judgment requires Farmland to "immediately pay over to the North Dakota Public Service Commission for deposit in the Trust Fund the sum of $780,000, which is the penal sum of the bond." Less than $780,000 will be necessary to pay the claims on the bond. In its report and recommendation, the PSC reported "a total payable to claimants as of August 22, 1990, of $289,066.44." The PSC also reported that interest was continuing to accrue. The PSC requested that the trial court order Farmland "to immediately deposit funds necessary to pay approved claims, plus interest, into the trust fund."

The PSC's report and recommendation allowed James E. Nygard's durum claim for $63,938.83, but reduced it by an offset of $48,948.00. The trial court ordered the report and recommendation amended to allow Nygard's claim for $63,938.83, without any offset. Adjusted for that amendment, PSC's report and recommendation would show a total payable to claimants as of August 22, 1990, of $338,014.44. Instead of ordering Farmland to pay the PSC $780,000 for deposit in the trust fund, we direct that the judgment be modified to order Farmland to immediately deposit funds necessary to pay approved claims, as amended by the trial court, plus interest that has accrued since the PSC presented its report and recommendation to the trial court. This modification will provide the PSC with the funds necessary to pay the claims allowed in its report, as amended by the trial court, plus interest, and will be in accord with its request that the trial court order Farmland "to immediately deposit funds necessary to pay approved claims, plus interest, into the trust fund."

der Ch. 60–04, N.D.C.C., for the purpose of proceeding against the warehouseman's bond and distributing the proceeds. The PSC issued its report and recommendation on August 27, 1990. Farmland, claimant James E. Nygard, and Drewes objected to the PSC's report and recommendation. After a hearing on December 21, 1990, the trial court issued findings of fact, conclusions of law, and an order on May 7, 1991. The trial court found that the grain on hand in the elevator at insolvency was sufficient to pay the claims against it; that the costs of $118,781.86 that Drewes deducted from the grain proceeds were reasonable and necessary; and that James E. Nygard was a grain claimant and was also a debtor because of an unpaid check he had issued to Woods for $48,948.00. The court also found:

"4. The Report and Recommendation of the Trustee allows Mr. Nygard a claim for 11,689 bushels of durum for a total ticket claim of $63,938.83. However, this claim is reduced by a contract advance of $48,948.00, leaving a proposed allowed claim of $14,990.83, with interest for a proposed total distribution of $17,088.10. Mr. Nygard and the Bankruptcy Trustee, Wayne Drewes, object to any setoff of liabilities owed by Mr. Nygard to the Woods Elevator.

\* \* \* \* \* \*

"6. The PSC and Farmland were involved and participated in the process in Bankruptcy Court. Farmland specifically objected to Mr. Nygard's claim in Bankruptcy Court. Nevertheless, the full claim of $63,938.83 was allowed without any setoff. Neither the PSC or Farmland has appealed that Order, nor have they obtained relief from the automatic stay to perform a setoff."

The trial court made the following conclusions of law:

"1. Farmland is liable on its bond for all claims, including Trustee's fees, expenses, and costs.

"2. The United States Bankruptcy Court has exclusive jurisdiction to resolve setoff and issues determining claims against property belonging to a debtor in Bankruptcy proceedings.

"3. The United States Bankruptcy Court's Orders regarding the claims of James E. Nygard are res judicata."

The trial court ordered: (1) that the PSC's report and recommendation "is ordered amended to allow a claim for James E. Nygard for durum in the amount of $63,-938.83, together with interest on that amount without setoff for $48,948.00 or any reduction"; (2) that Farmland "deposit the total amount of the bond, $780,000.00, with the [PSC] for inclusion in the trust account"; and (3) that the PSC "pay all claims as established in the Report and Recommendation of the Trustee as amended." Judgment was entered accordingly and Farmland appealed.

Farmland contends that its "liability on the bond is determined by State Law irrespective of how the grain was handled by the Bankruptcy Court" and that "[t]he Trial Court erred in holding that the Bankruptcy Court's determination of the claim of James E. Nygard was res judicata."

One of the primary disputes in this appeal is with regard to Nygard's durum claim for $63,938.83, which the bankruptcy court allowed, but which the bankruptcy trustee did not pay because there was no durum on hand at the time of Woods' insolvency, and with regard to whether that claim should be paid in full or reduced by an offset of $49,948.00 for an unpaid check Nygard had issued to Woods. The bankruptcy court allowed the claim and did not order an offset. The trial court found, however, that the bankruptcy court "provided that when the claim was paid, Mr. Nygard would pay the $48,948.00 check." The trial court concluded that the bankruptcy court's orders "regarding the claims of James E. Nygard are res judicata" and ordered that Nygard's durum claim for $63,938.83 be paid "without setoff for $48,-948.00 or any reduction."

 Although we need not determine, as the trial court did, that the bankruptcy court's orders regarding Nygard's claim and debt are res judicata, we believe that deference to the bankruptcy court's orders

in this warehouseman's bankruptcy proceedings is appropriate. As a result of bankruptcy court rulings, other rights have intervened. The St. Paul Bank for Cooperatives has a perfected security interest in Woods' accounts receivable, including Nygard's unpaid check to Woods for $48,948.00. Nygard's durum was subject to a government loan when he sold it to Woods. Nygard gave Woods a check for $48,948.00 to purchase spring wheat to replace the durum. The spring wheat was then subject to the government loan and has been forfeited to the Commodity Credit Corporation. Such intervening equities suggest the desirability of deference to the bankruptcy court's decisions. Further suggesting the appropriateness of such deference is a need for comity among coordinate courts called upon to resolve disputes arising upon the insolvency of a public warehouseman. Litigation in state court and in bankruptcy court raises the possibility of inconsistent rulings on similar issues. We will ordinarily give effect to bankruptcy court decisions as a matter of comity to avoid the prospect of "the state and federal courts ... reaching different results, ultimately resulting in unseemly and unnecessary conflict as each properly sought to enforce its determinations" [*NoDak Bancorporation v. Clarkson,* 471 N.W.2d 140, 144 (N.D.1991)].[2] Thus, we will not pass judgment anew on decisions made in the bankruptcy proceedings by deciding the issues raised in this appeal as though the PSC had liquidated the grain in Woods' facilities and there had been no bankruptcy proceedings.

The trial court found that the grain on hand at Woods elevator at insolvency was sufficient to pay the grain claims against it. However, Drewes did not distribute approximately $200,000 of the grain proceeds to grain claimants[3] and Farmland

argues that it is entitled to a credit in the amount of grain proceeds not distributed to grain claimants. The trial court's decision makes Farmland liable for $118,781.86 withheld from the grain proceeds by the bankruptcy trustee for costs and fees. Farmland argues that § 60–04–09, N.D.C.C., authorizes the deduction from trust fund assets of expenses incurred by the PSC, but that "[t]here is no requirement that the bonding company be liable for any other fees or costs other than those incurred by the PSC." Farmland argues that the trial court erred in accepting the PSC's report and recommendation, which did not provide for offsets under § 60–04–09, N.D.C.C., other than as to the Nygard claim. Farmland is essentially arguing that its liability is limited to what it would have been if the PSC, rather than the bankruptcy trustee, had liquidated the grain in Woods' facilities. We disagree.

Section 60–02–09, N.D.C.C., requires an applicant for a public warehouseman's license to file a bond "for the benefit of all persons storing or selling grain in such warehouse ... conditioned [on] ... faithful performance of the licensee's duties as a public warehouseman" and "for the specific purpose of:

"a. Protecting the holders of outstanding receipts.

"b. Covering the costs incurred by the commission in the administration of chapter 60–04 in the event of the licensee's insolvency."

Section 60–04–03.1, N.D.C.C., provides that, upon the insolvency of a warehouseman, a trust fund consisting of, among other things, grain in the warehouse or its proceeds and the warehouseman's bond, "shall be established for the benefit of receipt holders of the insolvent warehouseman and to pay the costs incurred by the [PSC] in

---

**2.** Although *NoDak Bancorporation v. Clarkson, supra,* dealt with preemption, rather than comity, both doctrines seek to avoid different results and unnecessary conflict between state and federal courts.

**3.** Some of the withheld grain proceeds not distributed to grain claimants was due to fees and expenses and some was due to the manner in

which the bankruptcy court allocates grain on hand to grain claimants, which is different from the procedure used by the PSC when it liquidates grain held by an insolvent warehouseman. Nygard's durum claim for $63,938.83 was not paid by the bankruptcy trustee because there was no durum on hand at the time of Woods' insolvency.

the administration of this chapter." Section 60-04-06, N.D.C.C., provides that the PSC may bring suits for the benefit of receipt holders "for the purpose of marshaling all of the trust fund assets and distributing the same among the receipt holders." That section also provides the order in which the PSC shall exercise recourse against the trust fund assets: (1) grain, (2) insurers of grain, (3) the warehouseman's bond, and (4) a person honestly converting grain, unless the PSC deems it necessary to pursue all its remedies at the same time. Section 60-04-09, N.D.C.C., provides in part:

"Upon the receipt and evaluation of claims filed with it, the commission shall file with the court a report showing the amount and validity of each claim after recognizing:

\* \* \* \* \* \*

"3. Deductions therefrom by reason of advances or offsets accrued in favor of the warehouseman.

\* \* \* \* \* \*

"5. In the case of scale tickets or warehouse receipts, the amount thereof based upon the market price prevailing on the date of the insolvency, with interest at the weighted average prime rate charged by the Bank of North Dakota since the date of the insolvency.

"The report must also contain a proposed distribution of the trust fund assets, less expenses incurred by the commission in the administration of this chapter, to claimants as their interests are determined....

\* \* \* \* \* \*

"Following hearing, the court shall approve or modify the report and issue an order directing payment of the necessary bond proceeds, distribution of the trust fund, and discharge of the commission from its trust."

Chapter 60-04, N.D.C.C., provides "an insolvency procedure 'designed to provide a prompt method for receipt holders to recover their claims.'" *North Dakota Public Serv. Comm'n v. Jamestown Farmers Ele-*

*vator, Inc.,* 422 N.W.2d 405, 407 (N.D. 1988), *quoting North Dakota Public Serv. Comm'n v. Valley Farmers Bean Ass'n,* 365 N.W.2d 528, 547 (N.D.1985). "[T]he trust fund exists for the benefit of all unpaid sellers of grain." *North Dakota Public Serv. Comm'n v. Central States Grain, Inc.,* 371 N.W.2d 767, 779 (N.D. 1985). As we further said in *Central States Grain, supra,* 371 N.W.2d at 779:

"The overriding purpose of requiring warehouseman's bonds is to protect all persons who sell or deliver grain to a warehouseman.... A surety's liability on a bond is conditioned on the faithful performance of a public warehouseman's duties under the law. We believe it to be beyond dispute that one of a warehouseman's duties under the law is to pay for the grain that it has purchased." (Citations omitted.)

In the case of stored grain, "[a] public warehouseman is liable to the owner for the delivery of the kind, grade, quality, and quantity of grain called for by the warehouse receipt." Section 60-02-22, N.D.C.C. "The obvious purpose of Chapter 60-04, N.D.C.C., is to aid receipt holders in redeeming their warehouse receipts by making the PSC the trustee of insolvent grain warehousemen with the duty of redeeming said receipts for as close to their full value as possible." *State ex rel. Public Serv. Comm'n v. R.F. Gunkelman & Sons, Inc.,* 219 N.W.2d 853, 859 (N.D.1974). *See also North Dakota Public Serv. Comm'n v. Valley Farmers Bean Ass'n, supra,* 365 N.W.2d at 540.

In *Central States Grain, supra,* the grain in the North Dakota facility was liquidated by a bankruptcy trustee appointed after Central States Grain filed a petition for relief under Chapter 7 of the Bankruptcy Code. The proceeds of the sale were placed in the bankruptcy account. The PSC did not recover either the grain or its proceeds for the trust fund, but proceeded against the warehouseman's bond. The bonding company [Millers National Insurance Company] argued that "because there was sufficient sunflower inventory to cover all valid claims, Millers should not be liable

for any amount in these proceedings." *Central States Grain, supra,* 371 N.W.2d at 774. This court held, however:

"Where, as in this case, there is in effect no 'grain in said warehouse' [§ 60–04–02(1), N.D.C.C.] at the time the PSC is appointed trustee, the PSC may seek to recover the penal sum of the warehouseman's bond for inclusion in the trust fund. We conclude that under the circumstances of this case, the district court had the authority to enter judgment against Millers even though the PSC took no steps to attempt to recover the proceeds of the sale by the bankruptcy trustee of CSG's sunflower inventory."

■ Under *Central States Grain,* the exposure to liability to receipt holders by a surety on a warehouseman's bond is reduced only to the extent that the receipt holders are able to recover from the bankruptcy trustee. The warehouseman's bond can be reached for any shortfall. Only through such a construction of the relevant statutes may the "law's purpose of settling the legitimate demands of those producers who store or sell grain with an insolvent warehouseman" be met. *Central States Grain, supra,* 371 N.W.2d at 779.

Relying on *North Dakota Public Serv. Comm'n v. Jamestown Farmers Elevator, Inc., supra,* Farmland contends that it should not be liable on the warehouseman's bond because "the acts which precipitated the claims against the bond were those which took place subsequent to Bankruptcy and over which the warehouseman could not have placed any control or influence." Farmland's reliance on that case is misplaced. That case represents a narrow exception to the rule of liability expressed in such cases as *R.F. Gunkelman & Sons, Inc., Valley Farmers Bean Ass'n,* and *Central States Grain.* In *Jamestown Farmers Elevator, Inc., supra,* 422 N.W.2d at 408, we held:

"Under §§ 60–02–09 and 60–04–02, N.D.C.C., Farmland was required to insure only JFE's faithful performance of its duties as a public warehouseman. The statutes did not require that Farmland's bond insure the faithful perform-

ance of the bankruptcy trustee's duties. Farmland is, therefore, not liable for any loss suffered by CCC as a result of deterioration in the quality of the grain while it was in the custody and control of the bankruptcy trustee."

We held that the bonding company was not liable for losses caused by deterioration in the quality of the grain resulting from the bankruptcy trustee's egregious neglect of the grain while it was in his custody and control. In this case, there has been no assertion of any neglect on the part of the bankruptcy trustee, and *Jamestown Farmers Elevator, Inc.,* is inapposite.

■ To limit bond coverage in the manner urged by Farmland "would effectively reduce the protection available to producers for whose benefit and protection the statute was designed." *Valley Farmers Bean Ass'n, supra,* 365 N.W.2d at 539. Under our statutes governing grain warehouses, grain receipt holders are entitled to be made whole, if possible, when a warehouseman becomes insolvent. A warehouseman is required to furnish a bond to provide that protection to producers who deliver grain for sale or storage. The receipt holders in this case have not been made whole. Farmland is, therefore, liable under its bond to the extent necessary to make the receipt holders whole after deducting what they have received from the bankruptcy trustee. We conclude that the trial court properly held Farmland so liable.

■ If Farmland believes it is entitled to a credit for the amount of grain proceeds not distributed to grain claimants, or should not be held responsible for paying the bankruptcy trustee's costs and expenses because they should not have been withheld from the grain proceeds, or is entitled to the deduction of offsets, its remedy is not to leave receipt holders unpaid but to seek relief in the bankruptcy proceedings. Once Farmland has paid the claims of receipt holders, it may seek relief in the bankruptcy proceedings. *See In re Woerner,* 19 B.R. 708, 711 (Bkrtcy.D.Kan. 1982):

"Section 509(a) recognizes this arrangement and grants to the third party a

right to subrogation to the creditor's claim when payments on behalf of the debtor are actually made. The subrogation rights under § 509(a) extend to both co-debtors and sureties. (Citations omitted.) Thus the surety with a right of *subrogation stands in the place of one whose claim he has paid. . . . United States v. Munsey Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947)."

*See also In re Hall,* 99 B.R. 425 (Bkrtcy. N.D.Iowa 1989), holding that Farmland Mutual Insurance Company, a bonding company that had paid a claim filed by a farmer who was unpaid when the grain merchant to whom he had sold grain filed a bankruptcy case, could file a claim in the bankruptcy case. The court in *Hall* also noted: "It is the obligation of the bonding company to make good the loss to Cowan [the unpaid farmer who had sold grain to Hall.]" *Id.,* at 428.

We are concerned with the dissent's assertion that "the position of the bankruptcy trustee creates an inherent unfairness" and its reference to the doctrine of res judicata. The fact that the bankruptcy court may have a different view of how to dispose of grain claims upon liquidation of the grain held by an insolvent warehouseman than either this court or the PSC ought not be attributed to the bankruptcy trustee. Although the trial court concluded that the bankruptcy court orders on the Nygard claims are res judicata, we have not made such a determination. In fact, we have suggested that, if it believes it is entitled to the deduction of offsets, Farmland's remedy is "to seek relief in the bankruptcy proceedings."

For the reasons stated, the judgment is affirmed as modified.

MESCHKE and LEVINE, JJ., and LAWRENCE E. JAHNKE, District Judge, concur.

LAWRENCE E. JAHNKE, District Judge, sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. Gierke III. Justice Johnson, not being a member of this Court at the time this case was heard, did not participate in this decision.

VANDE WALLE, Justice, concurring in part and dissenting in part.

It seems to me that the position of the bankruptcy trustee creates an inherent unfairness, whether intentional or otherwise, when the trustee's handling of the payment of claims in the bankruptcy proceeding requires the bonding company to pay more than it would have been required to pay had there been no bankruptcy proceeding. This is particularly true when the trustee, not the bonding company, is in a position to take control of the grain, sell it and disburse and dispose of the proceeds without regard to the bonding company's interest and to the benefit of certain other creditors.

Although the trustee's actions may create unfairness, that unfairness may be appropriate in many instances. But, in this instance, that unfairness is magnified by the majority's treatment of the Nygard offset. I am not convinced that the Bankruptcy Court considered the matter of the offset in a manner which it intended would be res judicata when subsequently Nygard was not paid from the bankruptcy estate because there was no durum on hand at the time of the insolvency nor any other funds from which to pay the claim. Thus the trial court found that the bankruptcy court "provided that when the claim was paid, Mr. Nygard would pay the $48,948.00 check." I do not understand the import of that finding. Does it mean that the Bankruptcy Court intended to say that "although we are not going to pay your claim, Mr. Nygard, whenever and by whomever it is paid, the offset cannot be allowed?" It is not clear to me that the bankruptcy court intended its statement to bind the State court in its application of the State law governing warehouse bonds.

I understand the need for deference outlined in the majority opinion and in the proper instance when the intent of the bankruptcy court is clear and unequivocal I would render that deference. I do not agree this is the appropriate case in which to defer because I am not convinced that

the trial court or the majority's construction of the bankruptcy court's decision was intended under these circumstances. In the absence of clear proof that the bankruptcy court intended its statement concerning the offset to restrict the normal application of our State law in the instance in which the claim was not paid in the bankruptcy proceeding, I would not conclude the doctrines of res judicata or judicial deference are applicable or appropriate to the Nygard claim against the bond in proceeding under State law. *C.f. State v. Liberty Nat. Bank and Trust Co.,* 427 N.W.2d 307 (N.D.1988) [Courts are reluctant to infer preemption and it is burden of party claiming that position to prove it] *cert. denied,* 488 U.S. 956, 109 S.Ct. 393, 102 L.Ed.2d 382. *See also Lohnes v. Cloud,* 254 N.W.2d 430 (N.D.1977) [Principle of Comity not a rule of law and does not exist by matter of right, but in discretion of court].

I would affirm the decision of the trial court except insofar as the Nygard offset is concerned. As to that matter, I would reverse the judgment of the trial court and reinstate the applicable portion of the Public Service Commission's report.